**TODD SHIPYARDS CORP., and Firemen's Fund Insurance Co., Petitioners,**

v.

**Gerald L. BLACK, and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

**No. 81-7494.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 8, 1982.

Decided Oct. 4, 1983.

Robert H. Madden, Detels, Draper & Marinkovich, Seattle, Wash., for petitioners.

Joshua T. Gillelan, II, Washington, D.C., Robert D. Duggan, Seattle, Wash., for respondents.

Before BROWNING, TUTTLE,* and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

This case is before us on an employer's petition to review a decision of the Benefits Review Board under the Longshoremen's and Harbor Workers' Compensation Act. The employer disclaims liability for the employee's occupational disease because the employee was also exposed to harmful stimuli while working for a subsequent employer not covered by the Longshoremen's Act. The employer also argues that, at the least, the damages should be apportioned. In any event, the employer contends that, under the time of injury rule, any compensation should be based on the employee's wages at the time he was exposed to the occupational hazard rather than when the disease manifested itself. The Administrative Law Judge rejected each of the employer's arguments. The Benefit Review Board affirmed all of the ALJ's holdings, despite the fact that a majority could not be mustered in support of or opposition to the ALJ's view regarding the proper interpretation of the time of injury rule. We conclude that we have jurisdiction notwithstanding the lack of agreement among the Board members, and affirm the decision of the Board. We hold that the employer is completely liable for the occupational injuries sustained by the claimant and that the employee's level of compensation must be based on his wages at the time the injury manifested itself.

I. FACTS

Gerald L. Black was employed in the State of Washington by Todd Shipyards Corporation as a welder from 1942 through 1945. During these three years, Black was

---

* Honorable Elbert Parr Tuttle, Senior Circuit Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

exposed to high doses of asbestos in very confined areas. According to Black's uncontroverted testimony, the asbestos "was all over. You had to wallow in it to do your welding, everything." The asbestos material was thrown about "like snowballs," and on one occasion Black had great difficulty locating a dropped glove because "it was so dusty and dirty down there you couldn't see." In 1945, Black's doctor advised him to leave Todd because of an illness involving vomiting and weight loss. Black was subsequently drafted into the armed forces but failed his medical examination, apparently because of bronchitis and sinus trouble.

Following several years at various outdoor jobs, Black began work for Boeing Aircraft Corporation in 1951. Black worked continuously for Boeing until he was forced to quit in May of 1977 because of periods of nosebleeds and coughing up blood. During his time with Boeing, Black was also exposed to asbestos on an "off and on" basis. The asbestos at Boeing was found in gloves used to handle hot materials and in the fireproof curtains around welding booths.

On May 27, 1977, surgery was performed to remove the right upper lobe of Black's lung because of a squamous cell carcinoma. While recovering from this surgery, Black was examined by chest disease specialist Dr. Jonathan H. Ostrow. On December 19, 1977, Dr. Ostrow informed Black that he was probably suffering from a form of asbestosis caused by his occupational exposure.

As a result of this diagnosis, Black filed a claim against Todd and its insurer, Fireman's Fund Insurance Company, under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.* (1976 & Supp. III 1979) ("the Act" or "LHWCA"). The parties stipulated that Black was permanently and totally disabled when his employment with Boeing terminated in May 1977.

Todd opposed Black's claim for compensation on three grounds. First, Todd argued that Black's disabling lung disease was not related to asbestos exposure while at Todd. Second, Todd claimed that its liability was superseded by Black's subsequent employment for 26 years at Boeing. At the very least, Todd argued, liability should be apportioned between the two employers.[1] Third, Todd urged that Black's compensation should be based on his average weekly wage in 1945, which Todd claimed was the approximate "time of injury" under the Act.

Each of Todd's arguments was rejected by a Department of Labor Administrative Law Judge. Following a full hearing, the ALJ held Todd completely liable for Black's disabling disease and compensated Black based on his weekly earnings at the time the disabling disease was diagnosed in 1977.

Todd appealed this ruling to the three-member Benefits Review Board. Two members of the BRB agreed with the ALJ's conclusion that Todd should be completely liable for Black's disability. These two members, however, had differing views as to the time of injury and, therefore, the appropriate level of compensation. The third Board member believed that Todd should not be liable at all; this member refused even to consider the time of injury issue. Recognizing that two votes were necessary to take official action, the Board issued a *per curiam* decision affirming the ALJ's holding that compensation should be based on Black's 1977 wages. Each member of the Board then set forth his individual views.

Todd now appeals the BRB's decision. We have jurisdiction to review any "final order of the [Benefits Review] Board" in a case where the "injury occurred" in this Circuit. 33 U.S.C. § 921(c) (1976).

Black, who was 63 at the time of the ALJ's hearing in 1979, died in 1981—three months before the Benefits Review Board rendered its decision. His widow, Zella

---

1. Neither party made an effort to join Boeing in the proceedings, nor was any evidence presented that the aircraft company was covered un-

der Section 2(4) of the LHWCA. 33 U.S.C. § 902(4) (1976). The ALJ thus presumed that Boeing was not covered by the Act.

Black, is now the claimant for survivor's benefits under 33 U.S.C. § 909 (1976).

## II. STANDARD OF REVIEW

 The ALJ's decision is reviewed by the BRB under the "substantial evidence" standard. 33 U.S.C. § 921(b)(3). The BRB must accept the ALJ's findings unless they are contrary to the law, irrational, or unsupported by substantial evidence. *Duncanson-Harrelson Co. v. Director, Office of Workers' Compensation Programs,* 686 F.2d 1336, 1338 (9th Cir., 1982); *Director, Office of Workers' Compensation Programs v. Campbell Industries,* 678 F.2d 836, 838 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983). We review BRB decisions for "errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations." *Bumble Bee SeaFoods v. Director, Office of Workers' Compensation Programs,* 629 F.2d 1327, 1329 (9th Cir.1980). Because the BRB does not make policy, its interpretations of the LHWCA are not entitled to any special deference. *Potomac Electric Power Co. v. Director, Office of Workers' Compensation Programs,* 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446, 454 n. 18 (1980); *Duncanson-Harrelson,* 686 F.2d at 1339.

## III. TODD'S LIABILITY—THE LAST COVERED EMPLOYER RULE

There is no dispute that Black was exposed to injurious doses of asbestos at both Todd and Boeing. Moreover, there is little doubt, according to the expert medical testimony presented to the ALJ, that this asbestos exposure caused Black's disabling lung disease. Indeed, Todd does not dispute the ALJ's finding—supported by ample medical testimony—that Black's inhala-

tion of asbestos was causally related to his lung disease and ultimate disability. Rather, Todd's argument throughout has been that it is completely absolved of liability because of Black's superseding exposure to asbestos during his 26 years at Boeing. In the alternative, Todd contends that liability should be apportioned between the two employers. We reject both of these arguments, as did the ALJ and a majority of the BRB.

Section 3(a) of the LHWCA provides that "[c]ompensation shall be payable under this Act in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States." 33 U.S.C. § 903(a) (1976). Black was exposed to the dangerous asbestos while being employed by Todd upon navigable waters and is thus covered by the Act.[2] Black's employment at Boeing, however, is apparently not covered under the LHWCA.

 In a situation where two LHWCA employers may be responsible for a work-related injury or disease,[3] the last employer is completely liable. After a full examination of the Act's legislative history, the Second Circuit found that

Congress intended that the employer during the last employment in which the claimant was exposed to injurious stimuli, prior to the date upon which the claimant became aware of the fact that he was suffering from an occupational disease arising naturally out of his employment, should be liable for the full amount of the award.

*Travelers Insurance Co. v. Cardillo,* 225 F.2d 137, 145 (2d Cir.), *cert. denied,* 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955). *See also Cordero v. Triple A Machine Shop,* 580

---

2. Under the Act "navigable waters" include "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employee in loading, unloading, repairing, or building a vessel." 33 U.S.C. § 903(a). There is no dispute that claimant's job with Todd Shipyards is covered by the Act.

3. Section 2(2) of the LHWCA defines "injury" as "such occupational disease or infection as arises naturally out of such employment...." 33 U.S.C. § 902(2). *See also Fulks v. Avondale Shipyards, Inc.,* 637 F.2d 1008, 1012 (5th Cir.), *cert. denied,* 454 U.S. 1080, 102 S.Ct. 633, 70 L.Ed.2d 613 (1981) (a disease arising from occupational exposure is compensable under the Act).

F.2d 1331, 1336–37 (9th Cir.1978), *cert. denied,* 440 U.S. 911, 99 S.Ct. 1223, 59 L.Ed.2d 459 (1979); *General Dynamics Corp. v. Benefits Review Board,* 565 F.2d 208, 212 (2d Cir.1977).

Congress intended that the last employer be completely liable because of "the difficulties and delays which would inhere in the administration of the Act" if attempts were made to apportion liability among several responsible employers. *Travelers Insurance Co. v. Cardillo,* 225 F.2d at 145. Moreover, the rule apportions liability in a fundamentally equitable manner because "all employers will be the last employer a proportionate share of the time." *Cordero v. Triple A Machine Shop,* 580 F.2d at 1336.

Todd contends that the last employer rule absolves it of liability because Black was last exposed to asbestos at Boeing. This argument, however, misconstrues the purpose of the rule. Congress did not intend that a company covered by the LHWCA should escape its legal responsibilities because a subsequent employer not covered by the Act also contributed to the occupational disease. On the contrary, the LHWCA and similar workmen's compensation statutes have been clearly and consistently interpreted to impose liability on the *last employer covered* by the applicable statute. To accept Todd's position would be to deny LHWCA compensation to many workers who were subjected to injurious stimuli but later worked at other non-covered jobs. Such a result would be contrary to the express purposes of the Act.

The Fifth Circuit's affirmance of a BRB decision in *Fulks v. Avondale Shipyards,* 10 BRBS 340 (1979), *aff'd,* 637 F.2d 1008 (5th Cir.), *cert. denied,* 454 U.S. 1080, 102 S.Ct. 633, 70 L.Ed.2d 613 (1981), is illustrative. Although Fulks was employed by Avondale Shipyards for 16 years, he was employed over navigable waters (and thus covered by the LHWCA) for only two months. 637 F.2d at 1010. During those two months,

however, Fulks was exposed to harmful sandblasting. Even though Fulks was also exposed to such sandblasting during the bulk of his non-covered employment following his exposure at sea, Avondale was held liable under the LHWCA. Todd's attempt to distinguish this ruling because only one employer was involved is not persuasive. The key to *Fulks* is that Avondale was held liable even though the employee's final and prolonged exposure to the injurious stimuli occurred in non-covered employment. In short, *Fulks* establishes that later exposure during a non-covered job does not absolve the covered employer of liability or vitiate the compensatory purposes of the LHWCA.

The Benefits Review Board has applied the last covered employer rationale to cases indistinguishable from the one at hand. In *Green v. Newport News Shipbuilding & Dry Dock Co.,* 13 BRBS 562 (1981), the employee was exposed to asbestos while working for an employer covered under the LHWCA. The employee subsequently worked in a non-maritime job during which he may have been exposed to asbestos. The BRB held that, irrespective of whether the employee was actually exposed during his non-maritime job, Newport News Shipbuilding was completely liable as the last employer covered by the Act. 13 BRBS at 565–66.[4]

The last covered employer rule has also been endorsed in state cases where the last employer is located in a state different from that in which the claim is brought. These state decisions commonly place full liability on the last employer covered by that state's workers' compensation laws regardless of whether the claimant was subsequently exposed to dangerous conditions by an out-of-state employer. *See generally Green v. Newport News Shipbuilding & Dry Dock Co.,* 13 BRBS at 565–66 and cases cited therein. *See also Garner v. Vanadium Corp. of America,* 194 Colo. 358, 572 P.2d

---

4. The Fourth Circuit Court of Appeals, in an unpublished memorandum, subsequently vacated and remanded the BRB's decision in *Green. Newport News Shipbuilding & Dry Dock Co. v. Green,* 688 F.2d 833 (4th Cir.1982).

The Fourth Circuit expressed no opinion on the Board's legal interpretation of the last covered employer rule and based its vacation order on other grounds.

1205, 1206 (1977); *Smith v. Lawrence Baking Co.,* 370 Mich. 169, 121 N.W.2d 684 (1963); *Hamilton v. S.A. Healy Co.,* 14 App. Div.2d 364, 221 N.Y.S.2d 325 (1961).

 In sum, Todd cannot escape its legal responsibilities by arguing that Black was also exposed to asbestos during later employment. We are not dealing with a case in which Todd has demonstrated that Black's injury resulted exclusively from his employment at Boeing. Todd has made no such showing here. On the contrary, the medical testimony presented to the ALJ led him to conclude that "asbestos exposure to any degree can be harmful" and that Black "had significant asbestos exposure while employed by Todd between 1942 and 1945 which resulted in the pathological lung changes described by" the medical experts. Todd does not credibly dispute the fact that Black was subject to these massive doses of asbestos during his employment there. The LHWCA does not impose upon the aggrieved worker the overwhelming burden of proving that his disease was caused entirely by the covered employer. All that must be proved is that the covered employer exposed the worker to injurious stimuli in sufficient quantities to cause the disease. Black has made that showing in this case, and Todd cannot excuse its conduct by claiming that a subsequent non-covered employer also exposed Black to asbestos.[5]

Apportionment of liability between Todd and Boeing is not authorized by the LHWCA. *Cordero v. Triple A Machine Shop,* 580 F.2d at 1337. The same concern for expeditious and efficient compensation that caused Congress to proscribe apportionment among covered employers precludes apportionment between a covered and non-covered employer. Congress' goal was to assure full compensation to industrially injured workers and to remove from LHWCA claimants the burden and delay inherent in litigating complex issues of proportionate liability. During hearings on the LHWCA, Congress rejected an employer-sponsored suggestion that liability should be apportioned, *Hearing of Committee on the Judiciary of the House of Representatives, on H.R. 9498,* 69th Cong., 1st Sess., April 8, 15, 22, 1926, precisely because "of the overriding importance of efficient administration" of the act. *Cardillo,* 225 F.2d at 145.

This case clearly illustrates the intractable administrative problems that would be posed by apportionment. Because asbestosis develops only after a long latency period, it is impossible for Black to demonstrate precisely how much of the disease was caused by each individual employer. Requiring a worker injured under such circumstances to prove proportionate liability might be tantamount to denying him any recovery whatsoever. As a result, apportionment of liability is contrary to the purposes of the LHWCA.[6]

5. *Todd* contends that the fact that Black's employment at Boeing is not covered by the LHWCA is irrelevant because state workers' compensation might be available. This argument ignores the fact that the LHWCA establishes a discrete compensation system independent of similar state programs. In *United Brands Co. v. Melson,* 594 F.2d 1068, 1074–75 (5th Cir.1979), for example, an employee was permitted to recover under both state law and the LHWCA without having his state award deducted from the federal award. The court found that "[u]nder the [LHWCA], United Brands is fully liable for Melson's injury. Melson's recovery from [an employer covered under state law] is a mere fortuity. To allow United Brands a set-off is to give United Brands a windfall in the amount of Melson's state award." *Id.* at 1075.

Moreover, Black would not be guaranteed an adequate recovery under state law. For in-

stance, the state compensation board might find that the occupational disease was caused entirely by Todd or that there was no causal relationship between Black's employment and the disease. The ultimate result might be that full recovery would be denied by both state law and the LHWCA. Congress clearly did not intend that the last employer rule should foster such a result.

6. To guarantee that the LHWCA meets its goal of compensating workers as efficiently as possible, both courts and the BRB have declined to apportion liability in a variety of circumstances. For instance, the Act compensates for occupational injuries that aggravate, accelerate or combine with a prior disease or infirmity. The relative contributions of the accident and the prior disease are not weighed. *Independent Stevedore Co. v. O'Leary,* 357 F.2d 812, 815 (9th Cir.1966); *Amos v. Robert C. Herd & Co.,*

■ The last covered employer rule means, plainly and simply, that the last employer covered by the LHWCA who causes or contributes to an occupational injury is completely liable for that injury. This is true even if the employee incurred the injury, in part, while subsequently working for an employer not covered by the Act.

## IV. TIME OF INJURY

The ALJ computed Black's level of compensation based on his average weekly wage of $293.86 at the time the asbestosis was diagnosed in 1977. The ALJ thus endorsed the "time of manifestation" definition of time of injury. On the other hand, Todd argued on appeal to the BRB that the time of injury should be determined by the "date of last harmful exposure." Because the last full year Black worked for Todd was 1944, his compensation would be based on his average weekly wage for that year—only 92.00.

On appeal, one member of the BRB agreed with the ALJ's "time of manifestation" argument, while a second member agreed with Todd's "date of last harmful exposure" theory. The third BRB member thought Todd should not be liable and did not address the compensation issues. The Board decided to affirm the ALJ's decision and compensate Black based on his 1977 average weekly wage.

### A. *Jurisdiction*

■ Under the LHWCA, only a "final order" of the BRB may be appealed. 33 U.S.C. § 921(c). Since the Act provides that "official action can be taken only on the affirmative vote of at least two mem-

bers" of the BRB, 33 U.S.C. § 921(b)(2), we must decide whether the BRB's decision on time of injury is final and thus subject to review.[7]

There are two reasons why the Board's current decision must be viewed as final. First, the *per curiam* opinion issued by all three BRB members explicitly affirmed the ALJ's decision on time of injury. The Board took this action even though there was no majority agreement on the underlying question. The two BRB members who found that Todd should be completely liable expressed differing views on the time of injury issue. The third member never considered that issue because he did not believe that Todd was liable at all. Realizing that two votes are necessary to constitute final action, the Board, in its *per curiam* opinion, affirmed the ALJ's decision. Although the *per curiam* opinion may not have any precedential effect because of the inability of two members to agree on a rationale, we find that for purposes of our review the Board's decision is final.

Second, the functions of the BRB do not require that we look beyond the vote to examine the actual reasons for the decision. We have not previously considered the appealability of BRB decisions affirming an order despite the absence of majority agreement on the reason for the decision, although we have dealt with a similar two member requirement for the Occupational Safety and Health Review Commission (OSHRC). 29 U.S.C. § 661(e) (1970). In *Cox Bros., Inc. v. Secretary of Labor*, 574 F.2d 465, 467 (9th Cir.1978), and *Willamette Iron & Steel Co. v. Secretary of Labor*, 604 F.2d 1177, 1179 (9th Cir.1979), *cert. denied*, 445 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 776

13 BRBS 1004, 1006 (1981); *Moore v. Paycor, Inc.*, 11 BRBS 483 (1979).

**7.** No party to this case disputes the jurisdiction of this court. Indeed, only the Director of the Office of Workers' Compensation Programs discusses the issue, and he urges us to exercise jurisdiction. Nonetheless, we are obligated to determine whether our jurisdiction has been, properly invoked. *See, e.g., Washington Local Lodge No. 104 v. Int'l Bhd. of Boilermakers*, 621 F.2d 1032, 1033 (9th Cir.1980); *Libhart v.*

*Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir.1979).

We clearly have jurisdiction to review the BRB's last covered employee ruling because two members of the Board agreed that Todd should be completely liable. *See, e.g., Shaw Construction Inc. v. OSHRC*, 534 F.2d 1183 (5th Cir.1976) (affirming the Commission's 2–0 vote on one violation but reversing and remanding the purported affirmance of a second violation by a 1–1 vote).

(1980), we held that decisions by an equally divided OSHRC to affirm ALJ rulings were not final and therefore not subject to review by this court. Whatever the merits of the *Cox-Williamette* rule—and it has been expressly rejected by two circuits—we decline to extend it to the review of BRB decisions under the LHWCA.[8]

The rationale underlying both *Cox* and *Williamette* is that the Commission established under OSHA,

> like other administrative bodies, is congressionally charged with, and therefore presumed to have greater expertise in, the administration of its substantive province. Accordingly, it would not be prudent to review those cases which the Commission itself has elected to review until it has properly done so.

*Cox,* 574 F.2d at 467 (citation omitted). In *Williamette,* we also relied strongly on the OSHA Commission's role as a policymaking body. We said that the decision there did not " 'necessarily [express] the view of the Commissioners, or [declare] Commission policy.' " 604 F.2d at 1180 (citation omitted; emphasis in original). We added that a "true affirmance . . . would, of course . . . be declarative of Commission policy." *Id.* at 1180.

The BRB does not possess any special expertise in the administration of the LHWCA and does not make policy. As the United States Supreme Court has recently held, "the Benefits Review Board is not a policymaking agency; its interpretation of the LHWCA is thus not entitled to any special deference from the courts." *Potomac Electric Power Co. v. Director, Office of Workers' Compensation Programs,* 449 U.S. at 278 n. 18, 101 S.Ct. at 514 n. 18. Consequently, the rationale of *Cox* and *Williamette* that we should defer until agencies with greater expertise issue majority rulings is inapplicable in the case of the BRB. Moreover, delay is especially undesirable where, as here, the Board members have set forth their views in separate opinions.

Because the BRB does not make policy and is not entitled to any special deference, we need not look behind the reasons for its *per curiam* decision to affirm the ALJ's rulings. The BRB's decision on the "time of injury" issue is final and subject to our review.[9]

### B. *Time of Injury*

Section 10 of the LHWCA provides that "the average weekly wage of the injured employee at the time of injury shall be taken as the basis upon which to compute compensation." 33 U.S.C. § 910 (1976). In most cases of traumatic injury, the time of injury will coincide almost exactly with the time the worker is disabled. When an occupational disease with a long latency period is involved, however, a worker may not become disabled until many years after exposure to the harmful stimuli. Consequently, we must decide whether the injury oc-

---

**8.** The rule has been rejected by the Third and Fourth Circuits. *See* n. 9 *infra. But cf. Shaw Construction Co.,* 534 F.2d at 1185–86.

**9.** The Director of the Office of Workers' Compensation Programs asks us to reconsider the *Cox-Williamette* rule in light of the "previously unconsidered views of the Third and Fourth Circuits." The Fourth Circuit's

> review of the legislative history of the Act [29 U.S.C. § 661] reveals no intent to limit judicial review of the Commission's decisions. The evident intent in enacting § 12 was to speed review of administrative citations and to ensure independent review of those citations (citations omitted).
>
> Allowing the ALJ's decision to stand is analogous to the case of split decision affirmances by a court of appeals or the Supreme

Court under which the lower court decision is allowed to stand.

*George Hyman Construction Co. v. OSHRC,* 582 F.2d 834, 837 n. 5 (4th Cir.1978). The Third Circuit also expressly rejected our *Cox-Willamette* rule because the "quorum requirement" of OSHA means "that, in the context of Commission review of an ALJ's decision, that decision will stand unless two Commission members vote to the contrary." *Marshall v. Sun Petroleum Products Co.,* 622 F.2d 1176, 1180 (3d Cir.), *cert. denied,* 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980).

In view of our decision not to extend the *Cox-Willamette* rule to the LHWCA, we need not engage in the reconsideration requested by the Director. We leave to a later date the question of the continued vitality of that rule in OSHA cases.

curs when the worker was exposed (the "time of last exposure" theory) or when the injury ultimately manifests itself (the "date of manifestation" theory).

Until recently, the BRB had consistently applied the date of manifestation theory. *See, e.g., Stark v. Bethlehem Steel Corp.,* 6 BRBS 600, 603 (1977), *reaffirmed on reconsideration,* 10 BRBS 350 (1979). *See also Ward v. General Dynamics Corp.,* 9 BRBS 569 (1978); *Keeler v. General Dynamics Corp.,* 7 BRBS 989 (1978). In *Dunn v. Todd Shipyards Corp.,* 13 BRBS 647 (1981), however, a majority of the Board reversed itself and adopted the time of last exposure approach.[10] Because *Dunn* is both ill-considered and contrary to the express purposes of the LHWCA, we reject its holding and instead adopt the date of manifestation theory previously followed by the Board. Accordingly, Black's compensation must be computed based on the date his injury manifested itself.

(1) *The "Time of Manifestation" Approach Best Accomplishes the Purposes of the LHWCA*

The paramount goal of the LHWCA is to compensate workers for the loss of wage-earning capacity resulting from occupational injuries and diseases. *See generally Palacios v. Campbell Industries,* 633 F.2d 840, 843 (9th Cir.1980); *National Steel & Shipbuilding Co. v. Bonner,* 600 F.2d 1288 (9th Cir.1979); 2 A. Larson, *Law of Workmen's Compensation* § 60.00 (1981). Because a worker's "disability reaches into the future, not the past[,] his loss as a result of injury must be thought of in terms of its impact on probable future earnings." 2 A. Larson, *Law of Workmen's Compensation,* § 60.-11(d). Thus, the Act necessarily focuses on *future* earning capacity rather than on some past period of employment.

The BRB's use of the date of last exposure approach in occupational disease cases is completely contrary to the purposes of the Act. Rather than compensating the worker for loss of future earning capacity, the last exposure theory affords compensation on the basis of the wages received when exposure occurred. This is so even when the disease ultimately caused by the exposure does not disable the worker until decades later. In the case at hand, for example, the last exposure approach would compensate Black based on his 1944 weekly wage of $92.00 rather than on the earning capacity he was robbed of when the asbestosis struck in 1977.[11] Such a result is incompatible with the goals of the LHWCA. The time of manifestation theory we now adopt is far more likely to insure that injured workers will be fairly compensated for their lost future earning capacities.

The time of manifestation approach also finds support in a realistic definition of the term "injury" as used in section 10 of the LHWCA. Asbestosis begins when asbestos

---

**10.** The BRB's decision in the case before us was handed down on the same day as *Dunn,* and the BRB member who wished to apply the time of last exposure rule relied on *Dunn.*

**11.** Although the issue was not thoroughly discussed, *Todd* mentions the possibility that § 10(h) of the LHWCA was meant to preclude the time of manifestation approach adopted here. § 10(h) was enacted by Congress in 1972 in order to offset, at least in part, the effects of inflation on LHWCA awards. *See, e.g., Landrum v. Air America, Inc.,* 534 F.2d 67, 69–70 (5th Cir.1976). For those who otherwise qualify under § 10(h)(3), "an injury which resulted in permanent total disability or death which occurred prior to October 27, 1972, shall be considered to have occurred on the day following such date." 33 U.S.C. § 910(h)(3) (1976). If § 10(h)(3) applies, the injured worker's compensation will be based on a percentage of the national average weekly wage. 33 U.S.C. § 910(f), (g) (1976).

We find nothing in the legislative history of § 10(h) to suggest that this section was meant to replace or to preclude the time of manifestation approach. On the contrary, § 10(h) was explicitly enacted to offset the effects of inflation on compensation awards then being paid at a rate Congress thought to be inadequate; i.e., awards for injuries that had manifested themselves prior to 1972. *See, e.g.,* Committee on Labor and Public Welfare, Longshoremen's Harbor Workers' Compensation Act Amendments of 1972, S.Rep. No. 92–1125, 92d Cong., 2d Sess., at 622 (1972); H.R.Rep. No. 92–1441, 92d Cong., 2d Sess., at 3, 19 (1972), U.S.Code Cong. & Admin.News 1972, p. 4698; *see also Landrum,* 534 F.2d at 69–70. There is no evidence that § 10(h) was intended to deal with those injuries manifesting themselves for the first time *after* 1972.

fibers become embedded in the lungs. The average person, however, would not consider himself "injured" merely because the fibers were embedded in his lung. Indeed, expert testimony presented to one court showed that "over 90% of all urban city dwellers have asbestos-related scarring." *Eagle-Picher Industries, Inc. v. Liberty Mutual Insurance Co.,* 682 F.2d 12, 19 (1st Cir.1982). Moreover, "even when the fiber has become embedded in the lung and the scarring process has begun, the end result, that is, disabling disease or death, is by no means inevitable." *Id.* at 18. Rather, the average person would consider himself injured when the asbestos fibers finally cause asbestosis—a process that can take much longer than 20 years. *Id.* at 18. As Judge Learned Hand once wrote, the LHWCA is

> not concerned with pathology, but with industry disability; and a disease is no disease until it manifests itself. Few adults are not diseased, if by that one means only that the seeds of future troubles are not already planted; and it is a common place that health is a constant warfare between the body and its enemies; an infection mastered, though latent, is no longer a disease, industrially speaking, until the individual's resistance is again so far lowered that he succumbs.

*Grain Handling Co. v. Sweeney,* 102 F.2d 464, 466 (2d Cir.), *cert. denied,* 308 U.S. 570, 60 S.Ct. 83, 84 L.Ed. 478 (1939).

In cases of occupational diseases with long latency periods, the trend is clearly toward the application of the time of manifestation rule. *See generally Wilson v. Johns-Manville Sales Corp.,* 684 F.2d 111, 115–17 (D.C.Cir.1982). For example, the First Circuit recently held that a disease

such as asbestosis "results" under health insurance policies "when it becomes clinically evident, that is, when it becomes reasonably capable of medical diagnosis." *Eagle-Picher Industries,* 682 F.2d at 25 (footnote omitted). The D.C. Circuit has decided that the statute of limitations regarding asbestos-related diseases does not begin to run "until that disease becomes manifest." *Wilson v. Johns-Manville Sales Corp.,* 684 F.2d at 112; *see also Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) (statute of limitations for silicosis does not begin to run until the disease manifests itself, even though the disease is often cumulative); *Todd Shipyards Corp. v. Allan,* 666 F.2d 399, 401 (9th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982) (upholding BRB finding that worker was not injured for purposes of the LHWCA statute of limitations until "he became aware of the full character, extent, and impact of the harm done to him."); *Clutter v. Johns-Manville Sales Corp.,* 646 F.2d 1151 (6th Cir.1981) (under Ohio law, statute of limitations for asbestos-related disease does not begin to run until disease manifests itself); *Grain Handling Co. v. Sweeney,* 102 F.2d at 466 (under LHWCA, an industrial disease is "no disease until it manifests itself"). *Cf. Keene Corp. v. Insurance Co. of North America,* 667 F.2d 1034 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982) (both manifestation and exposure dates trigger coverage for asbestos-related diseases under insurance policies).[12]

■ In sum, the time of manifestation approach best comports with the primary goal of the LHWCA, the concept of disease as understood by both the medical expert

**12.** Petitioner raises an additional argument that we believe supports our reading of the Act rather than petitioner's. Petitioner points to the 1972 Amendment to §§ 12(a), 13(a) of the LHWCA adding a phrase to the statute of limitations provisions tolling the statute until the employee is "aware of a relationship between the injury ... and the employment." Petitioner argues that if "time of injury" meant "time of manifestation" this addition would be unnecessary. On the contrary, this addition strongly supports the view that time of injury *must* mean time of manifestation.

If "injury" means "exposure" as petitioner argues, then the amendment would not, in fact, toll the statute as Congress intended. An employee is generally aware of the relationship between exposure and his employment from the first exposure. In this case, for example, claimant Black was certainly aware from his first days on the job of his exposure to asbestos fibers (the "injury" under petitioner's view) and its relationship to his employment. The amendment would not, therefore, toll the statute for Black and his suit would be barred. Interpreted this way, the statute of limitations would be tolled by this amendment only when

and the average worker, and the trend of judicial opinion. Consequently, for purposes of determining the proper rate of compensation, the time of injury under section 10 of the LHWCA is defined as the date when the occupational disease manifests itself through a loss of wage-earning capacity.

### (2) The BRB Had No Justification for Abandoning the Time of Manifestation Approach

In *Dunn v. Todd Shipyards Corp.*, 13 BRBS 647 (1981), a majority of the BRB advanced five reasons to justify its abandonment of the time of manifestation approach in favor of the last exposure rule. In light of the policies that underlie the LHWCA, none of these reasons is sufficient to justify such a change in policy.

First, the *Dunn* majority asserted that the time of last exposure is more readily ascertainable and thus likely to reduce litigation. There is no merit to this contention. Because occupational diseases such as asbestosis involve long latency periods, it is almost impossible to determine the exact date on which the harmful exposure occurred. In fact, because the exact date of exposure cannot be easily determined, there might be an incentive in many cases for employers and insurers to litigate the time of injury issue in an effort to limit the amount of the compensation award. As a result, litigation might actually increase under *Dunn's* date of last exposure rule. *See, e.g., Keene Corp. v. Insurance Co. of North America*, 667 F.2d at 1043 n. 17 (time of manifestation rule in LHWCA cases is justified by the overriding importance of efficient administration in the workmen's compensation system); Fitzhugh, "Disheartening Prospects: The Stress of Occupational Disease Cases on the Longshoremen's and

Harbor Workers' Compensation Act," 22 *So. Texas L.J.* 471, 483 (1982).

▮ Second, the *Dunn* majority held that

> since an occupational disease is compensable only if it arises out of and occurs in the course of [covered] employment, ... the time of injury for determining loss of wage-earning capacity can be causally related to employment only if it is the date on which the claimant was last subjected to the cause of the disease.

*Dunn*, 13 BRBS at 663 (citations omitted). Once again, however, the BRB has ignored the express language of the LHWCA. The Act's coverage does not depend on whether the occupational disease or injury manifests itself during the course of employment. On the contrary, we have recently reiterated that the Act's statute of limitations does not begin to run until the worker is "aware of the full character, extent, and impact of the harm done to him." *Todd Shipyards Corp. v. Allan*, 666 F.2d at 401. All that is required by section 2(2) of the LHWCA is that the injury or disease arise naturally out of the worker's employment. 33 U.S.C. § 902(2) (1976).

Third, the *Dunn* majority is concerned with the possibility that insurance coverage might have expired for injuries that manifest themselves long after employment terminates. 13 BRBS at 663. However, the BRB fails to explain why the burden of an employer's inadequate insurance coverage should fall on an innocent disabled worker. Moreover, the BRB cannot point to any examples of inadequate coverage. Indeed, the most common type of workers' compensation insurance covers employers for any injuries sustained during a worker's term of employment; coverage does not usually terminate because injuries manifest themselves after employment has ended. *See,*

the worker is initially unaware of exposure to a substance at his employment. Congress could not have intended such a narrow application for its amendment and there is no support in the legislative history for such an interpretation.

If however, "injury" means "manifestation," then the purpose of the amendment can be understood. Congress intended to remedy casual link problems generated by latent occupa-

tional diseases. *See Legislative History of the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972*, 92nd Cong., 2d Sess. 157 (1972) (remarks of Rep. Daniels). A disease may manifest itself long before the employee becomes aware of its cause. Congress, therefore, tolled the statute until the employee could become aware of the relationship between the disease or injury and its cause—his employment.

*e.g., Pennsylvania National Mutual Casualty Insurance Co. v. Spence,* 591 F.2d 985, 987 (4th Cir.1979), *cert. denied,* 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1980) ("Just as the employer remained liable for the death benefits, even though death occurred after the employee ceased to work for the employer, so did the liability of the insurance carrier under its policy in favor of the employee continue for death benefits originating in the injury occurring when it was the employer's compensation carrier, even though it thereafter ceased to be the employer's carrier."). In any event, Todd does not argue that its policy with Fireman's Fund Insurance Company is tied to the date of manifestation rather than to Black's period of employment.

Fourth, the *Dunn* majority argued that the date of last exposure standard would guarantee compensation for workers who are retired when their injuries manifest themselves. 13 BRBS at 663. Although this is a laudable concern, the paramount goal of the LHWCA is to compensate for lost earning capacity. There is some question whether the Act applies to workers who, prior to the time of manifestation of an injury, retire permanently for wholly unrelated reasons. Even if a majority of the Board is correct in its view that the Act does apply to such workers, this fact does not compel a different result than the one we reach here. If the LHWCA applies to permanently retired workers, we assume that the appropriate level of compensation would be based on the last weekly wage prior to retirement. In any event, we believe the time of manifestation rule leaves sufficient latitude for the BRB and the courts to determine the proper level of compensation in these kinds of cases.

Fifth, the *Dunn* majority thought it particularly important that the date of last exposure rule protects employers and their insurers from liability disproportionate to that which was anticipated at the time the insurance was purchased. 13 BRBS at 665. Once again, however, the BRB has unjustifiably placed the burden of unanticipated liability on injured workers rather than on employers and insurers. In fact, employers and insurers are in the best position to predict and compensate for future increases in liability. Moreover, the LHWCA clearly does not intend that employees should be disadvantaged by the failure of employers and insurers to predict future costs accurately. For instance, the 1972 amendments to section 9 of the Act retroactively provide death benefits to survivors of an employee who was permanently disabled by a work-related illness but later died of another cause. Compensation for medical care for an injured worker is not limited by the Act to the cost of such care when the worker was actually employed. Indeed, the *Dunn* majority is unable to cite any evidence of a congressional intent that the LHWCA should balance the cost of unanticipated liability to insurers and employers against the harm to injured workers. On the contrary, the Act is explicitly intended to compensate for lost future earning capacity. Employers cannot evade their legal duties under the Act by claiming that they failed to account for increases in liability.

 There is simply no sound basis for abandoning the time of manifestation rule. Consequently, we affirm the ALJ's calculation of Black's LHWCA compensation based on the time when the asbestosis manifested itself through a loss of Black's earning capacity.[13]

## V. CONCLUSION

We agree with the ALJ and the BRB that Todd is wholly liable under the LHWCA for Black's occupational disease. We hold that the last employer covered by the Act is wholly liable even though an industrial injury or disease is caused in part by a subsequent employer who is not subject to the Act. Moreover, we hold that the

---

**13.** Related to Todd's argument that compensation should be based on Black's 1944 wages is the claim that the applicable LHWCA provisions should be those in effect in 1944 rather than the current provisions offering more generous benefits. We disagree. Consistent with

the Act's policy of compensating for lost future earning capacity, we have held that LHWCA amendments do apply to claims filed after the amendments even though the injury may have occurred before the amendments became effective. *See, e.g., Todd Shipyards Corp. v. Allan,*

date the disease manifests itself determines the time of injury for purposes of calculating compensation levels.[14]

---

666 F.2d at 401; *Todd Shipyards Corp. v. Witthuhn,* 596 F.2d 899, 901–02 (9th Cir.1979); *Dillingham Corp. v. Massey,* 505 F.2d 1126, 1129 (9th Cir.1974).

14. Subsequent to our decision in this case, the Supreme Court issued its opinion in *Morrison-Knudsen Construction Co. v. Director (OWCP),* —— U.S. ——, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983). In *Morrison-Knudsen,* the Court held that the term "wages" under § 2(13) of the LHWCA, 33 U.S.C. § 902(13), does not include employer contributions to employee benefit plans. While cautioning that the LHWCA "is not to be judicially expanded because of 'recent trends,'" 103 S.Ct. at 2052 (citation omitted), the Court found that the language of the Act

was "plain" and the legislative history provided "abundant indication" that the term "wages" was not meant to include employer contributions to benefit plans. 103 S.Ct. at 2049, 2050.

We have considered the Court's opinion in *Morrison-Knudsen* and find that it does not require us to change anything we have said. Neither the plain language nor the legislative history of the LHWCA prohibits the time of manifestation approach. This conclusion, in and of itself, distinguishes this case from *Morrison-Knudsen.* Even more important, we find that in light of both the language and the legislative history of the LHWCA, the time of manifestation approach best accomplishes the purposes of the Act.