Joe A. PEEK (Deceased) and
Mary Peek, Appellants,

v.

SKW/CLINTON and Alaska Pacific
Assurance Company, Appellees.

No. S–4935.

Supreme Court of Alaska.

June 25, 1993.

Chancy Croft, Chancy Croft Law Office, Anchorage, for appellants.

James E. Hutchins, Faulkner, Banfield, Doogan & Holmes, Anchorage, for appellees.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

### OPINION

MATTHEWS, Justice.

In this case, Mary Peek, the widow of Joe Peek, appeals the superior court's affirmation of the Alaska Workers' Compensation Board's ("Board") denial of death benefits to her from SKW/Clinton, one of Joe Peek's employers. We AFFIRM the Board's order denying and dismissing Peek's claim against SKW/Clinton.

### I. *FACTUAL AND PROCEDURAL BACKGROUND*

Joe Peek worked as a pipefitter and plumber for almost 45 years in California, New Mexico, Arizona, Nevada, Idaho, and Alaska. Throughout his career he was exposed to asbestos in the work place. His last three employers were all located in Alaska: Fluor Alaska, from 1975 to 1977; SKW/Clinton, from August 1977 to January 1978; and Litwin Corporation, from July 1980 through December 1980. In April 1986, Peek was hospitalized with shortness of breath and chest pain. He was diagnosed as having a tumor consistent with mesothelioma.[1] Peek had sur-

---

1. Mesothelioma is a tumor arising from the mesothelial cells lining the pleural cavity. It is generally associated with exposure to asbestos.

gery in June 1986, was again hospitalized in April 1987, and died on May 4, 1987. The cause of death was listed as respiratory failure due to abdominal ascites resulting from mesothelioma metastasis.

Joe Peek's widow, Mary Peek, claimed Joe's mesothelioma was caused by his exposure to asbestos in the work place and filed a claim for death benefits under the Alaska Workers' Compensation Act against eighteen Alaskan employers for whom Peek had worked. On January 13, 1989, the Board approved a compromise and release agreement between Mary Peek and ten of the former employers and their insurers involving payment of approximately $200,000. One of the settling parties was Litwin Corporation, Peek's last employer in 1980. The Board dismissed four other defendants, but denied SKW/Clinton and Fluor's motions for dismissal.

After a hearing adjudicating Mary Peek's claims against Fluor and SKW/Clinton, the Board issued a decision denying and dismissing Peek's claims against both employers. The Board found that Peek's employment at Litwin in 1980 was the last employment that constituted a substantial factor in bringing about his death. Therefore, in accordance with the "last injurious exposure" rule, the Board relieved SKW/Clinton and Fluor of any liability for payment of death benefits to Mary Peek. On appeal, the superior court affirmed the Board's decision. Peek appeals.[2]

## II. *DISCUSSION*

Peek makes two arguments on appeal: (1) that the Board incorrectly applied the "last injurious exposure" rule when it relieved SKW/Clinton, the second-to-last employer, of any liability for death benefit payments; and (2) that the Board erred in finding that Peek's employment at Litwin Corporation, his last employer, constituted

a substantial factor in causing Peek's death. We address these contentions in turn.

### A. Did the Board Properly Apply the "Last Injurious Exposure" Rule? [3]

■ This court adopted the "last injurious exposure" rule in *Ketchikan Gateway Borough v. Saling*, 604 P.2d 590, 596–97 (Alaska 1979). Under this rule, full liability is placed on the most recent employer whose employment of the claimant bears a causal relation to the claimant's disability. 4 Arthur Larson, *The Law of Workmen's Compensation* § 95.20 (1990). In *United Asphalt Paving v. Smith*, 660 P.2d 445 (Alaska 1983), we set out two determinations that must be made under this rule: "(1) whether employment with the subsequent employer 'aggravated, accelerated, or combined with' a pre-existing condition; and, if so, (2) whether the aggravation, acceleration or combination was a 'legal cause' of the disability, i.e., 'a substantial factor in bringing about the harm.'" *Id.* at 447 (quoting *Saling*, 604 P.2d at 597, 598).

Peek argues that no decision in this state has ever allowed the rule to be used, as it was by SKW/Clinton, as a defense to a claim for compensation. Peek contends that the rule is meant only to be a "sword for an injured worker, not a shield for an employer."

SKW/Clinton cites *State, Department of Highways v. Burgess Construction Co.*, 575 P.2d 792 (Alaska 1978), for the proposition that the "last injurious exposure" rule can be used as a defense. In that case, the employee, Benson, filed workers' compensation claims against Burgess Construction, where he had worked several years, and the State, his last employer. *Id.* at 793–94. Burgess argued that it was not liable as it was not the last place of employ-

---

**2.** Peek does not appeal the dismissal against Fluor, because between SKW/Clinton and Fluor, SKW/Clinton is the last employer.

**3.** Whether the Board properly applied the "last injurious exposure" rule is a question of law,

and as such is subject to independent review by this court. *Childs v. Kalgin Island Lodge*, 779 P.2d 310, 313 (Alaska 1989) (citing *Simon v. Alaska Wood Prods.*, 633 P.2d 252, 254 (Alaska 1981); *M–K Rivers v. Schleifman*, 599 P.2d 132, 134 (Alaska 1979)).

ment where Benson was exposed to the poison causing his disease. The Board nevertheless held Burgess liable for Benson's disability and Burgess appealed to the superior court. *Id.* at 794. The State moved to dismiss the appeal as it pertained to the State on the grounds that the appeal was taken too late. *Id.* The State's motion was granted, and no appeal was taken from the order dismissing the State. *Id.* Subsequently the superior court found that the Board erred in not imposing liability on the State as the last employer and remanded the case to the Board to determine the liability of the State as the last employer. The State appealed. *Id.*

This court agreed with the State that the superior court had erred in remanding the case to the Board to determine whether the State was liable after the State had been dismissed from the case; further, we agreed that the dismissal was technically proper. Nonetheless, we reversed the superior court's order dismissing the State. We took this step in order to avoid "a serious injustice" to the employee due to the procedural error of the first employer. *Id.* at 796. We noted that if we affirmed the dismissal of the State, the result on remand to the Board might be that "the State rather than Burgess may be liable to Benson under the last injurious exposure rule. The Board will not have jurisdiction over the State ... [because the State had been dismissed from the case] and thus Benson may find that while he has a compensable disability, he will be legally entitled to benefits from no one." *Id.*

SKW/Clinton interprets *Burgess* as recognizing that the last injurious exposure rule can be used as a defense. Peek argues that *Burgess* was decided before we adopted the "last injurious exposure" rule in *Saling* and therefore cannot be considered an interpretation of *Saling*.

While *Burgess* obviously cannot be considered an interpretation of *Saling*, it is an interpretation of the "last injurious exposure" rule. By recognizing that on remand the State might be found to be the "last employer on whose job Benson was injuriously exposed," we implicitly acknowledged that Burgess could raise the rule as a defense, thereby avoiding liability. Our concern was that the last employer to expose the employee was no longer before the Board, and that use of the rule as a defense by another employer would defeat the employee's claim completely.[4] For this reason, we relaxed our procedural rules and reversed the superior court's dismissal of the last employer.

*Burgess* thus suggests that an employee may use the last injurious exposure rule as a defense. Two other cases cast further light on the appropriate defensive use of the last injurious exposure rule.

First, the Ninth Circuit allowed use of the last injurious exposure rule as a defense under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–50, in *Kelaita v. Office of Workers' Compensation Programs*, 799 F.2d 1308 (9th Cir.1986). In *Kelaita*, the employee filed claims against his last two employers: Triple A Machine Shop and General Engineering. An administrative law judge denied both claims, but Kelaita appealed only his claim against Triple A. *Id.* at 1309. On remand from an order vacating the judge's ruling, the judge found that General was liable under the last responsible employer rule and denied Kelaita's benefits as General was no longer a party. *Id.* at 1310. Kelaita appealed, arguing that "where there is no jurisdiction over a potentially liable subsequent employer, the [last injurious exposure] rule should not defeat a worker's claim." *Id.* at 1311. The Ninth Circuit rejected this argument and

---

**4.** The Ninth Circuit Court of Appeals faced a similar situation in *Todd Shipyards Corp. v. Black,* 717 F.2d 1280 (9th Cir.1983), a case brought under the Longshore and Harbor Workers' Compensation Act. In *Todd,* the Ninth Circuit acknowledged that the "last injurious exposure" rule could be used as a defense. *Id.* at 1284. However, the court did not allow Todd, the second-to-last employer, to utilize it as such because the last employer was outside the coverage of the Act. *Id.* at 1286. The Ninth Circuit recognized the possibility of an employer using the rule as a defense, but limited the rule to "the *last employer covered* by the applicable statute." *Id.* at 1285.

allowed defensive use of the last injurious rule because:

> [t]he lack of jurisdiction over General is the fault of neither General nor Triple A. General attempted to participate in the appeal, but Kelaita made it clear he was appealing only as to the decision regarding Triple A. Kelaita cannot now attempt to hold Triple A liable and deprive it of the last responsible employer defense when Kelaita himself decided to pursue his claim only against Triple A.

*Id.* at 1311.

Second, in *Carrier v. Shelby Mutual Insurance Company,* 370 Mass. 674, 351 N.E.2d 505 (1976), *aff'g Carrier's Case,* 3 Mass.App. 502, 334 N.E.2d 633 (1975), the Supreme Judicial Court of Massachusetts addressed a fact pattern quite similar to the present case. The employee suffered successive injuries while working for two employers. Both injuries contributed to his present disability—the more recent only to the extent of ten percent of the total disability. The employee settled with the more recent employer. His claim against the earlier employer was held to be barred under the Massachusetts last injurious exposure rule. *Id.* 351 N.E.2d at 507.

*Kelaita* and *Carrier* both indicate that when the last employer was at one time properly before the adjudicating authority, but is later removed from the case by a voluntary act of the worker, the worker cannot avoid application of the last injurious exposure rule. We agree that this approach is reasonable. In this case, Peek made the decision to settle with Litwin, Joe Peek's last employer. With the Board's approval, the settlement became "enforceable the same as an order or award of the board" and "discharge[d] the liability" of Litwin as to Peek. AS 23.30.012. Thus Peek's voluntary act removed from the case the employer potentially liable under the "last injurious exposure" rule. The possibility that the Board would find Litwin to be the employer liable under the rule

was a risk Peek took in settling with Litwin.

■ We hold that an employer can use the "last injurious exposure" rule as a defense to liability where the employee has settled with the last employer who is potentially liable and was properly before the Board.[5]

### B. Is There Substantial Evidence to Support the Board's Finding That Joe Peek's Employment at Litwin Corporation Constituted a Substantial Factor in Causing Peek's Illness?

■ "[T]he question of whether employment aggravated or accelerated a pre-existing disease or injury is one of fact to be determined by the Board and it is not the function of the court to reweigh the evidence or choose between competing inferences." *Burgess Constr. Co. v. Smallwood,* 623 P.2d 312, 317 (Alaska 1981). The Board's finding that Joe Peek's employment at Litwin in 1980 was a substantial factor in bringing about Peek's mesothelioma and subsequent death is such a finding of fact. We will affirm the Board's factual findings where substantial evidence exists " 'in light of the whole record that a reasonable mind might accept as adequate to support the board's conclusion.' " *Summerville v. Denali Center,* 811 P.2d 1047, 1051 (Alaska 1991) (quoting *Delaney v. Alaska Airlines,* 693 P.2d 859, 863 (Alaska 1985)).

Peek argues that even if the "last injurious exposure" rule can be used as a defense, there was insufficient evidence for the Board to find that Peek's employment at Litwin met the factual and legal causation requirements this court set out in *United Asphalt Paving,* 660 P.2d at 447 (*see supra* p. 416). Therefore, Peek argues that as his employment at SKW/Clinton does meet these requirements, SKW/Clinton is liable under the "last injurious expo-

---

**5.** We recently held that when the last employer is not within the jurisdiction of the Board, as in the case of an out-of-state employer, the last employer in Alaska may not use the last injurious exposure rule as a defense. *Wolfer v. Veco, Inc.,* 852 P.2d 1171 (Alaska 1993). If the employee has settled with the out-of-state employer, double recovery may be avoided by giving credit for the benefits received from the out-of-state claim. *Id.*

sure" rule. The question is not, however, whether the exposure at SKW/Clinton was a substantial factor. The question is whether the exposure at Litwin, a subsequent employer, was also a substantial factor in causing Peek's death. As we pointed out in *Saling*, under the "last injurious exposure" rule, an employee need not show that employment with the last employer was the legal cause of disability, only a legal cause of the disability. *Saling*, 604 P.2d at 598.

There is no dispute that Joe Peek was exposed extensively to asbestos on several jobs. At the hearing, testimony was presented by several of Peek's co-workers that asbestos was "like snow" in the air on several jobs including SKW/Clinton. Although Peek argues that there was no testimony indicating that Peek was exposed to asbestos at Litwin, the Board was presented with the deposition of Floyd Luster, who stated that exposure at Litwin also was like "snow in the air," and that Peek would have been exposed to the asbestos in the course of his job. Because Peek presented no significant evidence to the contrary, we cannot say that the Board erred in finding that Peek was in fact exposed to high levels of asbestos at both SKW/Clinton and Litwin.

The more difficult question is whether exposure at Litwin was a legal cause, a "substantial factor in bringing about the harm." *Id.* Three medical experts testified in this case: Dr. Alan Gazzaniga, the surgeon who originally diagnosed Peek and operated on him; Dr. Irwin Stoloff, an oncologist; and Dr. Ken Miller, a specialist in occupational medicine. All three agreed that if the exposure at SKW/Clinton was as described by Peek's co-workers, then that employment was a substantial factor in the development of Peek's mesothelioma.

The doctors were not as emphatic in their conclusion that Peek's employment at Litwin was also a substantial factor in causing his death. Nevertheless, two of them did give testimony which can be so construed.[6] Dr. Stoloff testified that, given Peek's exposure to asbestos over thirty-forty years, the exposure at both SKW/Clinton and Litwin was a substantial additive factor to the fiber burden that increased the risk of mesothelioma, particularly if the exposure was as heavy as Peek's co-workers testified.[7] Dr. Miller was more equivocal in his testimony, but did not rule out the possibility that the Litwin exposure was a substantial factor. Dr. Miller testified that mesothelioma is dependent on two factors, the latency period, defined as the time elapsed between the initial exposure to asbestos and the development of the tumor, and the total dose of exposure. The further away in time from the initial exposure, the less likely the exposure is a substantial factor in the development of the disease. However, Dr. Miller testified that

> any dose, additional cumulative dose, as I said earlier, increases the chances that the response you are looking for—in this case, mesothelioma—would be more likely to occur, and if that is your—if that is your background understanding, then any exposure within a reasonable latency period could be a substantial contributing factor.[8]

Although the doctors' testimony was not absolute, the Board found the testimony sufficient to conclude that Peek's exposure at Litwin was a substantial factor in aggravating or accelerating Peek's death. Under the deferential standard of review employed by this court, the evidence is suffi-

---

6. Dr. Gazzaniga testified that it was out of his area of expertise to determine if the exposure at Litwin was a substantial factor.

7. Stoloff testified that "any employment that released significant respirable fibers of asbestos would have contributed to his mesothelioma."

8. Peek argues that the exposure at Litwin could not be a substantial factor in Peek's death as the average latency period for mesothelioma is thirty-forty years, and the shortest latency period

testified to was seven years. The latency period, however, is not the issue in this case. SKW/Clinton is not arguing that the exposure at Litwin was the initial first exposure or cause of Peek's disease. Rather, SKW/Clinton is arguing that as each exposure to asbestos is cumulative and increases the risk of developing mesothelioma, the exposure at Litwin "aggravated, accelerated, or combined with" pre-existing exposure to cause Peek's death.

**420**

cient " 'in light of the whole record that a reasonable mind might accept as adequate to support the board's conclusion.' " *Summerville*, 811 P.2d at 1051 (quoting *Delaney*, 693 P.2d at 863).

### III. *CONCLUSION*

The Board did not err in allowing SKW/Clinton to use the "last injurious exposure" rule as a defense. Peek has not been left without compensation. By settling with Litwin, Mary Peek accepted the risk that the Board might find Litwin to be the last employer to substantially contribute to Joe Peek's death. Furthermore, under the standard of review for factual findings, substantial evidence exists in the record to support the Board's finding that Peek's employment with Litwin was a substantial factor in aggravating or accelerating Peek's death. Therefore we AFFIRM the decision of the superior court affirming the Board's order denying and dismissing Mary Peek's claim against SKW/Clinton.