580 F.2d 1331
 Octavio CORDERO and Director Office of Workers' Compensation
Programs, United States Department of Labor, Respondents,
v.
TRIPLE A MACHINE SHOP and Mission Equities Insurance Group,
Petitioners.
 No. 76-3206.
 United States Court of Appeals,
Ninth Circuit.
 Aug. 29, 1978.
 
 Gerald A. Falbo of Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., for petitioners.
 Octavio A. Cordero, pro se.
 Timothy S. Gibbons, San Francisco, Cal., for respondents; Alfred G. Albert, Acting Sol., Harry L. Sheinfeld, Atty., Laurie M. Streeter, Washington, D. C., on brief.
 On Petition for Review of an Order of the Benefits Review Board, United States Department of Labor.
 Before CHAMBERS, KILKENNY and HUG, Circuit Judges.
 KILKENNY, Circuit Judge:
 
 
 1
 This is a petition for review of an order of the Benefits Review Board, United States Department of Labor, filed by Triple A Machine Shop, employer, and Mission Equities Insurance Group, insurance carrier. The insurance policy was issued pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, as amended, 33 U.S.C. § 901, Et seq.
 
 BACKGROUND
 
 2
 Respondent Cordero (claimant), a 55-year old welder, had worked in that capacity with various employers for over 30 years. He had had a chronic cough since the late sixties and a shortness of breath since 1970. For several years he had worked sporadically for Triple A in its ship repair shop. He renewed his work for this company in May, 1972, and continued into August of the same year, when he was laid off for lack of work. Triple A recalled him on October 16, 1972, but he was suffering from a chest cold and unable to return on that day. He did, however, return to work on October 17th and worked through October 19th when he was unable to work. He has not been gainfully employed since that time, although he has done some work around the house.
 
 
 3
 Subsequently, claimant sought recovery under the Act for total disability. A formal hearing was held before an Administrative Law Judge (ALJ) to resolve questions concerning the nature and origin of the claimant's pulmonary condition. Petitioners contend that: (1) claimant was not totally and permanently disabled; (2) if claimant was found to be totally and permanently disabled liability should not rest totally on petitioners, but rather be apportioned among all of claimant's previous employers; and (3) if claimant was found to be totally and permanently disabled and petitioners' liability was not reduced by apportionment, § 8(f) of the Act, 33 U.S.C. § 908(f), limited petitioners' responsibility to 104 weeks of benefits because claimant was partially permanently disabled when he began working for petitioner Triple A. The balance of claimant's disability would be paid from a special fund pursuant to § 44 of the Act, 33 U.S.C. § 944.
 
 
 4
 In November, 1975, the ALJ found that claimant was permanently and totally disabled as a result of a pulmonary impairment which had been, at least, aggravated by his employment as a welder with the petitioner, Triple A, and, therefore, was entitled to benefits under the Act. Moreover, the ALJ held that petitioners' liability was not reduced by either an apportionment among claimant's previous employers or application of § 8(f) of the Act. Petitioners appealed to the Benefits Review Board of the United States Department of Labor (Board). The Board affirmed the decision of the ALJ.
 
 SCOPE OF REVIEW
 
 5
 It is well settled that the Board's findings may not be disturbed unless they are unsupported by "substantial evidence on the record considered as a whole.", Banks v. Chicago Grain Trimmers Ass'n, 390 U.S. 459, 467, 88 S.Ct. 1140, 1145, 20 L.Ed.2d 30 (1968); O'Leary v. Brown-Pacific-Maxon, Inc.,340 U.S. 504, 508, 71 S.Ct. 470, 95 L.Ed. 483 (1951), or as stated in Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469, 478, 67 S.Ct. 801, 91 L.Ed. 1028 (1947), are "forbidden by the law." The reviewing court's function is exhausted when it appears that there is warrant in the evidence and a "reasonable legal basis" for the Board's award. Cardillo, supra, at 479, 67 S.Ct. 801; Walker v. Rothschild Int'l. Stevedoring Co., 526 F.2d 1137 (CA9 1975); Nardella v. Campbell Machine, Inc., 525 F.2d 46 (CA9 1975).
 
 ISSUES
 I.
 
 6
 Did the Board correctly affirm the ALJ's finding that claimant was permanently totally disabled by a pulmonary impairment arising out of his employment with Triple A?
 
 
 7
 Dr. Cosentino, a specialist in chest diseases, testified that he first saw the claimant on November 22, 1972, on a referral from another doctor, because of a positive tuberculin skin test. Dr. Cosentino's examination convinced him that claimant had never had tuberculosis and that his then chest involvement was in no way related to tubercle bacilli in his body. The claimant's history disclosed that he had had some coughing and wheezing dating back ten or fifteen years, but no evidence of allergies. After conducting rather elaborate tests, the doctor decided that claimant was suffering from obstructed airways and concluded that his condition was caused by cigarette smoking and exposure to oxides of nitrogen (welding fumes). As part of his examination, the doctor found that the claimant had a fiberous reaction in the small airways of the lung which was at one time reversible, but at the time of the examination, however, had reached what the doctor described as a plateau. Additionally, the doctor said that any type of physical exertion accelerates this condition and determined that the claimant's ability to work even in a sedentary job was now restricted to isolated days. The doctor also testified that claimant was permanently steroid dependent. On cross-examination, the doctor pointed out that there certainly was an acute aggravation of the claimant's condition in his last employment. However, he could not specifically put a percentage on the amount of the claimant's permanent condition which resulted from the inhalation of welding fumes. His final conclusion was that the basic cause of claimant's illness was cigarette smoking with exposure to welding fumes as an aggravating factor. Consequently, it was his opinion that the aggravation caused by the fumes during the last period of employment was a major factor in the claimant's permanent total disability.[1]
 
 
 8
 Petitioners' witness, Dr. Collins, an internist, after examining the claimant and reviewing the medical reports concluded that claimant suffered from chronic bronchitis and chronic obstructive lung disease. He felt that the claimant's bronchitis developed as a result of long standing cigarette smoking and prior infections. He conceded that exposure to fumes and odors of nitrogen in the course of his employment might cause temporary exacerbation of claimant's symptoms. Nevertheless, he said that the severe condition resulting in total disability developed during the period when claimant was not employed, and that the limited October, 1972, exposure could not lead to the claimant's substantial disability. Dr. Collins highlighted the physical work, as shown by the record, which claimant did around his home in replacing the roof and installing wallboard. It was his opinion that claimant's condition would have, under his work program, progressed substantially as it did, regardless of the claimant's activities or work. However, in the final analysis, he opined that inhaling welding fumes contributed, to some extent, to the permanent irritation or damage, but felt that this irritation was temporary and would abate.
 
 
 9
 Paul L. DeSilva, another doctor called by the petitioners, examined the claimant and expressed the opinion that many things other than his exposure to welding fumes affected the claimant's upper respiratory condition. He believed that the three subsequent days of work during October might have, at most, increased the claimant's respiratory tract problem for a few weeks.
 
 
 10
 Under the provisions of the Act, disability is an economic concept based upon a medical foundation. Duluth, M. & I.R. Ry. v. U. S. Dept. of Labor, 553 F.2d 1144, 1149 (CA8 1977); Nardella v. Campbell Machine, Inc.,supra, at 49. The degree of disability cannot be measured by physical condition alone, but consideration must be given to the claimant's industrial history and the availability of the type of work he can do. Atlantic & Gulf Stevedores v. Director, etc., 542 F.2d 602 (CA3 1976).
 
 
 11
 The problem before us is succinctly stated in Independent Stevedore Co. v. O'Leary, 357 F.2d 812, 815 (CA9 1966), where the court said:
 
 
 12
 "If an employee is incapacitated from earning wages by an employment injury which accelerates a condition which would ultimately have become incapacitating in any manner, the employee is incapacitated 'because of' the employment injury, and the resulting 'disability' is compensible under the Act."
 
 
 13
 Consequently, we must weigh the evidence to consider if it substantially supports the conclusion that the fumes aggravated claimant's disability. The doctor testifying on behalf of claimant concluded that the fumes inhaled during the three day employment period aggravated his disability. The petitioners' doctor was unable to put "a value on the amount of injury which resulted from the last three days." and admitted that he really could not determine if welding fumes or smoking caused claimant's admitted medical problem.[2] Accordingly, even under the testimony of petitioners' doctor, the claimant should be viewed as suffering from a permanent total disability caused by a pulmonary impairment arising out of his employment as a welder.
 
 
 14
 We have here a pure question of fact which was resolved against the petitioners by the ALJ and the Board. Where the ALJ relies on witness credibility in reaching his decision, our court will interfere only where the credibility determinations conflict with the clear preponderance of the evidence. NLRB v. Hospital & Institutional Workers, 577 F.2d 649 (CA9 1978); NLRB v. Western Clinical Laboratory, Inc., 571 F.2d 457, 459 (CA9 1978), or where the determinations are "inherently incredible or patently unreasonable." NLRB v. Anthony Co., 557 F.2d 692, 695 (CA9 1977). The duties of the ALJ under the National Labor Relations Act, the Act before the court in the above authorities, are similar, if not identical, to the duties of the ALJ under the Act before us. Consequently, the decisions under the Labor Relations Act serve as a sound and authoritative guide to our review of the issues of fact in this case.
 
 
 15
 Considerable of petitioners' argument is devoted to a recitation of the factors other than welding fumes which arguably affected the claimant's pulmonary impairment. Conceding that the record supports this argument, nonetheless, we are bound by the rule that the presence of other contributing factors do not control the determination of applicability under the "aggravation rule." In fact, the "aggravation rule" is only relevant when other factors are present.
 
 
 16
 Petitioners' reliance on Goins v. Noble Drilling Corp., 397 F.2d 392 (CA5 1968), is misplaced. A total of eleven medical reports relating to the claimant's continued disability were involved in Goins. The court characterized nine of the reports as indicating no disability, one was equivocal and one consisted of little more than a restatement of subjective complaints. In making an award to claimant, the Deputy Commissioner, the trier of fact under the Act prior to 1972, made no reference to any of the reports on the claimant who had by that time returned to work and was receiving continuing disability benefits. Goins is the type of a case where if the trier of fact had held otherwise, his findings might be deemed "inherently incredible or patently unreasonable" under the doctrine taught in NLRB v. Anthony Co., supra, at 695.
 
 
 17
 We conclude that there is substantial medical and other evidence to support the findings of the ALJ and the Board that the claimant was totally and permanently disabled by a pulmonary impairment arising out of his employment as a welder.
 
 II.
 
 18
 Next, petitioners argue that the ALJ erred in finding that Triple A, as the last employer under which the claimant was exposed to the injurious welding fumes, should be solely liable for his disability benefit. They concede that Triple A was the last employer where the claimant was exposed to the injurious fumes, but claim that their due process rights are violated by assessing full disability liability against the last employer.
 
 
 19
 The bellwether case on the subject is Travelers Ins. Co. v. Cardillo, 225 F.2d 137, 145 (CA2 1955), Cert. denied 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800. There, the court noted that administrative convenience made the last employer doctrine legally acceptable. The underlying rationale is that all employers will be the last employer a proportionate share of the time. In arriving at its decision, the Cardillo court fully examined the legislative history of the Act and held that this concept was allowable. The legal thinking behind the Cardillo decision has been upheld by the Second Circuit as recently as General Dynamics Corp. v. Benefits Review Board, 565 F.2d 208 (CA2 1977). We quote from that decision:
 
 
 20
 "We see no reason now to depart from Judge Medina's searching and perceptive analysis in Cardillo. The Supreme Court has recently emphasized that, '(W)e must bear in mind that considerations of Stare decisis weigh heavily in the area of statutory construction, where Congress is free to change this Court's interpretation of its legislation.' Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 2070, 52 L.Ed.2d 707 (1977). Cardillo has been the law of this Circuit for more than two decades; it has been followed by the Board; and we have found no contrary law in other circuits. During this long period of consistent judicial application, Congress has not amended the Act to provide for a different rule." Id. at 212. (Emphasis supplied.)
 
 
 21
 We find no Ninth Circuit authority on the subject.
 
 
 22
 On a similar constitutional challenge to regulations under the provisions of related legislation (the Federal Coal Mine Health & Safety Act of 1969), 30 U.S.C. §§ 902(f), 925, 932(a)(c)(h) and 936, a three-judge court in National Independent Coal Operator's Ass'n v. Brennan, 372 F.Supp. 16, 24 (DC DC 1974), Aff'd, 419 U.S. 955, 95 S.Ct. 216, 42 L.Ed.2d 172 (1974), made short shrift of the constitutional challenge by saying that the provisions of the Act pursuant to which the regulations were promulgated did not deprive the operators of their property without due process of law or deny them equal protection of the law in violation of the Fifth Amendment and proceeded to say:
 
 
 23
 "Furthermore, it does not violate due process of law to place full liability on one of several operators responsible for the pneumoconiosis." Id. at 24.
 
 
 24
 National Independent Coal Operator's Ass'n. was summarily affirmed by the Supreme Court. The summary affirmance by the Supreme Court is an affirmance on the merits. Hicks v. Miranda, 422 U.S. 332, 343-44, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); Ohio, ex rel. Eaton v. Price, 360 U.S. 246, 247, 79 S.Ct. 978, 3 L.Ed.2d 1200 (1959). See C. Wright, Law of Federal Courts, § 108 (3d ed.) 1976. In Doe v. Hodgson, 478 F.2d 537, 539 (CA2 1973), Cert. denied sub nom. Doe v. Brennan, 414 U.S. 1096, 94 S.Ct. 732, 38 L.Ed.2d 555 (1973), it is said that the lower courts are bound by summary decisions of the Supreme Court: "Until such time as the Court informs (them) that (they) are not."
 
 
 25
 True enough, the court in National Independent Coal Operator's Ass'n. placed some emphasis on the fact that the claimant had been employed for An accumulated period of one year by the last operator on which liability was placed and, while here the claimant had been employed by Triple A for only the months of May, June, July, and until early August, 1972, and for three days in October, 1972. However, we do not think National Independent Coal Operator's Ass'n., in any way, dilutes the principles established in Cardillo. We hold that here there is a rational connection between the length of employment proven and the contribution to the development and aggravation of the disease.
 
 
 26
 In Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 14, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), Mr. Justice Marshall in an exhaustive opinion upholding, in general, the constitutionality of the Federal Coal Mine Health & Safety Act of 1969 recognized the summary affirmance in National Independent Coal Operator's Ass'n. He noted that the Court's summary affirmance in that case did not foreclose the district court's inquiry into the unconstitutionality of §§ 411(c)(3) and (4), subjects not there presented.
 
 
 27
 That a similar question was presented to the Supreme Court in National Independent Coal Operator's Ass'n. is made clear by the jurisdictional statement filed with that Court by appellant under the heading "Questions Presented", page 3, from which we quote:
 
 
 28
 "5. Has the Secretary of Labor exceeded his authority under the Act by issuing regulations under which:
 
 
 29
 (b) the employer who last employed a miner for a cumulative period of one year is responsible for payment of black lung benefits, without apportionment of the costs of such benefits among the various other mine employers by whom the miner was employed; and . . ."
 
 
 30
 Not only is the question presented, but the constitutional issue is fully argued on pages 17 and 18 of the statement. The appellee fully responds to the appellant's argument on this issue on page 17 of his motion to affirm.
 
 
 31
 Unlike Usery, where the issue there before the Court had not been presented on the previous summary affirmance, a similar constitutional issue was clearly presented to the Supreme Court in National Independent Coal Operator's Ass'n. and the district court was affirmed.
 
 
 32
 Because the onset of disability is a key factor in assessing liability under the last-injurious-exposure rule, it does not detract from the operation of this rule to show that the disease existed under the prior employer or carrier, or had become actually apparent, or had received medical treatment, so long as it had not resulted in disability, 4 A. Larson's Workmen's Compensation Law, § 95.21, nn. 88, 89, 90. True enough, the Larson Treatise treats cases mainly concerned with State Workmen's Compensation Acts, nonetheless, the same principles of law should and do apply. Travelers Ins. Co. v. Cardillo, supra. We quote from the Larson Treatise:
 
 
 33
 "In the case of occupational disease, liability is most frequently assigned to the carrier who was on the risk when the disease resulted in disability, if the employment at the time of the disability was of a kind contributing to his disease." Id. at § 95.21.
 
 
 34
 The rule is similar to the "last-injurious-exposure rule" in successive injury cases which places full liability on the carrier covering the risk at the time of the most recent injury that bears a casual relation to the disability.
 
 
 35
 We conclude that the Cardillo rule is sound and does not offend either the due process or the equal protection clauses of the Constitution.
 
 III.
 
 36
 Finally, petitioners argue that claimant was partially permanently disabled and thus their liability was limited pursuant to 33 U.S.C. § 908(f). They contend that the claimant's recovery be paid, in significant part, by the special fund established by 33 U.S.C. § 944. The issue here presented provides an interesting parallel with the last employer doctrine discussed under the previous assignment, because 33 U.S.C. § 908(f) is the one provision in the Act which authorizes a type of apportionment of liability. That provision, however, was designed to perform a specific function and it does not come into play until certain specific prerequisites are met.
 
 
 37
 As we have earlier noted, the Act's overall coverage encompasses job-related incidents which result in the aggravation of underlying conditions and that the last employer is fully responsible for the aggravation occurring during that employment. The Supreme Court in Lawson v. Suwannee Fruit & S.S. Co., 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611 (1949), commented on the fact that under narrow circumstances, the rule might produce some damaging effects on the employment prospects of handicapped workers and called attention to the provisions of 33 U.S.C. § 908(f). Recognizing that in the case of an employee with an "existing permanent partial disability" who has an injury which results in a greater degree of disability because of preexisting disability, the employer's liability will be limited and the remaining benefits will be paid by the special fund.
 
 
 38
 The provisions of § 908(f) as applicable to the record before us are:
 
 
 39
 "(f) Injury increasing disability: (1) If an employee receives an injury which of itself would only cause permanent partial disability but which, combined with a previous disability, does in fact cause permanent total disability, the employer shall provide compensation only for the disability caused by the subsequent injury: Provided, however, That in addition to compensation for such permanent partial disability, and after the cessation of the payments for the prescribed period of weeks, the employee shall be paid the remainder of the compensation that would be due for permanent total disability. Such additional compensation shall be paid out of the special fund established in section 944 of this title."
 
 
 40
 The ALJ found that at the time of the aggravation while in Triple A's employment, claimant did not have an existing permanent partial disability. He made this finding in the face of petitioners' contention that the pulmonary difficulties that predated claimant's employment with Triple A were disabling.
 
 
 41
 Admittedly, claimant had substantial breathing problems prior to his employment with Triple A. Nevertheless, he testified that he accepted whatever work was available in his trade until his condition was aggravated in October, 1972, to such an extent, that he was forced to leave what might be considered his life long employment. There is no evidence that the problems confronting claimant prior to the October incident in any way affected his earnings or interferred with his ability to perform his work. The four to six week interlude in claimant's employment between August and October, 1972, should not bar his claim. Although there may have been some deterioration in claimant's condition from August to October, when he was laid off, claimant was capable of working as a welder. The term "disability" as it is used in § 908(f) includes both an employment-related disability and one unrelated to employment. Lawson v. Suwannee Fruit & S.S. Co., supra. To permit petitioners to hide behind their voluntarily imposed lay-off of claimant would provide them with an unearned benefit without in any way satisfying the objectives of § 908(f).
 
 
 42
 In general, the Board is restricted to overturning an ALJ's legal conclusions and leaving his credibility determinations intact. Cheney California Lumber Co. v. NLRB, 319 F.2d 375 (CA9 1963); Pittsburgh-Des Moines Steel Co. v. NLRB, 284 F.2d 74 (CA9 1960). We quote from Dillingham Corp. v. Massey, 505 F.2d 1126 (CA9 1974):
 
 
 43
 "However, Congress did not intend that all pre-existing conditions come under coverage by the Fund, but only those 'manifest' at the time of initial employment. (Citation omitted.) An underlying condition which is not manifest to a prospective employer cannot qualify as a previous disability. (Citation omitted.) Thus, the key to the issue is the availability to the employer of knowledge of the pre-existing condition, not necessarily the employer's actual knowledge of it. (Citation omitted.)" Id. at 1128.
 
 
 44
 In Dillingham, the claimant suffered a broken hip at an early age which resulted in a slightly shorter left leg and a minor limp. Nevertheless, he led a physically active adolescence and later worked as a ship fitter, a logger, and a marine machinist. His condition, as here, in no way prevented him from engaging in normal employment. In 1963, he fell while working as a machinist on a ship. We again quote from Dillingham :
 
 
 45
 "He suffered an injury which Severely aggravated his pre-existing condition. Further degeneration developed in 1966, culminating in a falling accident at his home in 1970, inability to continue employment, and a bleeding duodenal ulcer, all found to be caused by the Aggravated condition." Id. at 1128. (Emphasis supplied.)
 
 
 46
 It is obvious that the legal philosophy employed in Dillingham is fully applicable to the aggravation of the pre-existing condition before us. Here, there is nothing in the record to indicate that claimant's condition was known or even available to the petitioners. The court observed that the key element is " what the employer has available to him when the hiring occurs, should he decide to take notice of it." Id. at 1128. True enough, there is evidence that claimant had symptoms of chest problems as early as 1967. Nonetheless, there is no evidence that his coughing affected his ability to work or to fully perform the functions of his employment, nor is there any evidence Triple A was aware of claimant's chest problems. As we have already noted "(d)isability is an economic as well as a medical concept." Nardella v. Campbell Machine, Inc., supra, at 49.
 
 
 47
 While the petitioners may find some comfort in Atlantic & Gulf Stevedores, Inc. v. Director, etc., 542 F.2d 602 (CA3 1976), the fact remains that the case turned on the finding of the ALJ that the employer was fully aware of the medical problems of the decedent at the time of employment. Additionally, the court held that the finding of the ALJ was supported by substantial evidence in the record as a whole and that the Board's order modifying the decision and order of the ALJ should be set aside. Here, as we have already noted, the ALJ made no such finding, nor is there any evidence in the record on which such a finding could be grounded. We hold that 33 U.S.C. § 908(f) has no application to these facts.
 
 CONCLUSION
 
 48
 Finding no error, we deny the petition for review and affirm the order of the Benefits Review Board.
 
 
 49
 REVIEW DENIED; ORDER AFFIRMED.
 
 
 
 [1]
 "Q. Doctor, what effect, if any, did the three days of working exposure in October of 1972, have on Mr. Cordero's overall condition with regard to permanent disability?
 A. This, as you know, was discussed at the deposition you took in my office, and my answer would be the same today as it was then. Certainly, there was an acute exacerbation of his symptomatology, so there certainly was acute aggravation." (R.T., p. 61, lines 13-19.)
 
 
 [2]
 "Q. Is there any doubt in your mind that he received some irreversible damage to his lungs?
 A. No. I would have to say that there is some probability that he did, but some of these are irritating to the extent, which I cannot be perfectly clear about, to the extent that he inhaled quantities of this, that part of this irration (sic) was temporary and goes away as any cold or respiratory irritation does, but that to some extent, This contributed to a permanent irritation or damage." Vol. III, R.T., p. 99, lines 2-10. (Emphasis supplied.)