Chase Scott HAYES, Petitioner,

v.

NATIONAL STEEL AND SHIPBUILD-ING COMPANY; Director, Office of Workers Compensation Programs, Respondents.

No. 00–70666.
BRB No. 99–0870.

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 16, 2000*.

Decided March 14, 2001.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2). Accordingly, the request for oral argument is denied.

Before WRIGHT, CHOY, and SKOPIL, Circuit Judges.

MEMORANDUM **

Chase Scott Hayes ("Hayes") petitions for review of a final order of the United States Department of Labor Benefits Review Board ("the Board"). Hayes contends that the Board erred in affirming the decision of an administrative law judge ("ALJ") denying him modification of a prior award of disability benefits under section 22 of the Longshore and Harbor Workers' Compensation Act ("LHWCA"). *See* 33 U.S.C. § 922 (permitting modification based on "a change in conditions or because of a mistake in a determination of fact"). We have jurisdiction pursuant to 33 U.S.C. § 921(c) and we deny the petition.

On May 7, 1984, ALJ Heyer determined that Hayes had suffered multiple industrial injuries during his employment with respondent National Steel and Shipbuilding Company ("NASSCO") and granted him a benefits award under the LHWCA based on the combined effects of various back and left knee injuries. Following this award, the parties entered into a $10,000 settlement for future medical expenses under section 8(i), 33 U.S.C. § 908(i).

In 1994, Hayes filed his first petition to modify his benefits award, which was denied. The Board administratively affirmed this decision, and this court dismissed Hayes' subsequent petition for review as untimely on June 6, 1997. Approximately eight months later, Hayes filed a second petition for modification with the DOL. The presiding ALJ denied modification, and the Board affirmed.

■ This court reviews the Board's decisions in LHWCA cases for errors of law and lack of support under adherence to the substantial evidence standard and we may affirm on any basis in the record. *Duhagon v. Metro. Stevedore Co.,* 169 F.3d 615, 618 (9th Cir.1999). The Board is required to accept the ALJ's findings of fact unless they are contrary to law, irrational, or unsupported by substantial evidence in the record when considered as a whole. *Marine Power & Equip. v. Dep't of Labor,* 203 F.3d 664, 667 (9th Cir.2000) ("A decision is supported by substantial evidence if there exists 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' ").

## I. 1981 Settlement Agreement

■ The ALJ determined that a 1981 settlement agreement between Hayes and NASSCO had no effect. The record shows that the parties' 1981 settlement agreement was not signed by the Deputy Commissioner of the Office of Workers' Compensation Programs. Prior to 1984, a section 8(i) settlement agreement was only effective if approved by the deputy commissioner. *See* 33 U.S.C. § 908(i)(A)(1981). *Compare* 33 U.S.C. § 908(i)(1)(1994), *as amended by* Pub.L. No. 98–426, *with* 33 U.S.C. § 908(i)(A)(1981). Given the fact that the 1981 settlement was not signed by the deputy commissioner, there is substantial evidence to support the ALJ's finding that the agreement was without effect. Thus, the Board correctly applied the law and adhered to the substantial evidence standard.

## II. 1986 Settlement Agreement

The ALJ concluded that both Hayes and NASSCO understood that their 1986 settlement agreement disposed of all future claims for medical benefits, including reim-

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

bursement for doctors' services, mileage, parking fees, or other medical benefits. Hayes contends that the ALJ made a mistake in fact because, according to Hayes, NASSCO continues to owe him approximately $7,000 under the settlement agreement, or alternatively, as reimbursement for past medical expenses that are allegedly not governed by the agreement.

In construing the evidence regarding the parties' intent behind their 1986 settlement, this court's "function is exhausted when it appears that there is warrant in the evidence and a reasonable legal basis for the Board's award." *Cordero v. Triple A Mach. Shop*, 580 F.2d 1331, 1333 (9th Cir.1978) (quoting *Cardillo v. Liberty Mutual Ins. Co.*, 330 U.S. 469, 479, 67 S.Ct. 801, 91 L.Ed. 1028 (1947)). First, the ALJ found that the language of the settlement agreement itself, along with the approval of the deputy commissioner, were sufficient to establish that Hayes surrendered his right to make future claims for medical benefits. The settlement agreement reads in relevant part: "All issues other than the need for future medical treatment have been resolved by the decision of R.S. Heyer, Administrative Law Judge dated April 18, 1986" and "Employer will pay for all outstanding medical charges prior to signing of agreement." The approval of the deputy commissioner states that it "discharg[es] the liability of the employer ... for any further payment of compensation for disability medical benefits only." This language clearly supports the ALJ's determination.

Second, the ALJ concluded that Hayes likely saw and read a letter explaining the terms of the settlement that NASSCO claims it attached to Hayes' copy of the agreement. Hayes argues that he never received this letter and contests the validity of the copy that NASSCO entered into the record. The ALJ weighed the contradictory evidence, made a determination as to the credibility of the witnesses, and reached a conclusion that NASSCO's statements regarding delivery of the letter were more credible than Hayes'. This court gives special deference to an ALJ's determinations regarding credibility of witnesses. *Id.* at 1335 ("Where the ALJ relies on witness credibility in reaching his decision, our court will interfere only where the credibility determinations conflict with the clear preponderance of the evidence."). Nothing in the record renders this credibility determination either incredible or unreasonable, or against the preponderance of the evidence.

Third, the ALJ found that a $3,000 advance together with a later $7,000 payment from NASSCO to Hayes, and the approval of the settlement by the deputy commissioner, insulate NASSCO from any further claims of medical benefits flowing from the injuries addressed in Hayes' original benefits award. *See* 33 U.S.C. § 908(i). In this regard, the ALJ determined that payments made by NASSCO to Hayes after settlement reveal sloppy record keeping, but do not entitle Hayes to further payments.

The above facts and determinations constitute substantial evidence to show that the parties intended for the settlement to dispose of unclaimed past expenses and future medical claims. *See Lockheed Shipbuilding v. Director, OWCP*, 951 F.2d 1143, 1146 (9th Cir.1991) ("[O]ur task is not to reweigh the evidence, but only to determine if substantial evidence supports the ALJ's findings.").

### III. Injuries to Hayes' Right Knee

A. The ALJ found that Judge Heyer did not err in failing to consider injuries to Hayes' right knee and right shoulder in granting an award of benefits because Hayes did not raise these injuries in his original claim. This finding is supported

by the record and, thus, failure to consider these injuries was not in error. *See* 33 U.S.C. § 920.

B. The ALJ also concluded that Hayes' later injuries to his right knee did not constitute grounds for modification of his award because those alleged injuries occurred as a result of a series of intervening causes. Hayes argues that he experienced a change in conditions warranting modification because his injuries to his right knee were the natural or unavoidable consequences of the injuries that he sustained at NASSCO.

After an exhaustive review of the record, the ALJ found that Hayes sustained at least two injuries to his right knee after he left NASSCO that were caused by a third party and were unrelated to his employment at NASSCO. Therefore, the ALJ determined that NASSCO was exonerated from responsibility. *See* 33 U.S.C. § 902(2) (" '[I]njury' means accidental injury ... arising out of and in the course of employment ... or as naturally or unavoidably results from such accidental injury ...."); *Cyr v. Crescent Wharf & Warehouse Co.,* 211 F.2d 454, 456–57 (9th Cir. 1954) (stating that a second injury fuses with an earlier compensable injury where "the second injury followed the first injury naturally or unavoidably"). *See also Wheeler v. Interocean Stevedoring, Inc .,* 21 BRBS 33, 1988 WL 232744, at *3 (DOL Ben. Rev. Bd.1988) ("Employer is liable for claimant's entire resultant disability unless the subsequent progression of claimant's condition is due to an intervening cause, in which case employer is relieved of the liability attributable to the intervening cause.").

In the first incident, Hayes was working as a self-employed painter in 1983 and fell from a store awning when a truck backed into the awning, causing an injury to his right knee. The record supports the ALJ's finding that Hayes did not establish that this accident was the natural or unavoidable result of the compensated injuries that he sustained at NASSCO. Thus, modification is not appropriate on the ground of change in condition due to this injury.

In the second incident, Hayes claims that his left knee "slipped out of joint" while he was walking up the steps to his apartment in 1984, causing all of his weight to be transferred to his right knee and injuring it. Hayes argues that the reports of Dr. Fuller show a causal connection between his compensated left knee injury and this right knee injury. However, the ALJ disregarded the causation section of Dr. Fuller's report based on the fact that Hayes was the primary source of Dr. Fuller's information about Hayes' medical history. In making this credibility determination, the ALJ reasoned that Hayes' recollection of his own medical history was frequently inconsistent, specifically noting, "Although the inconsistencies are too numerous to list, ... [Hayes] often gave the medical doctors in this case incomplete histories of his prior medical problems."

■ Such credibility determinations are within the ALJ's province. *Todd Pac. Shipyards Corp. v. Director, OWCP,* 913 F.2d 1426, 1432 (9th Cir.1990). The ALJ can properly, after weighing all the evidence, accept part of a witness' testimony and reject the rest. *Nardella v. Campbell Mach., Inc.,* 525 F.2d 46, 49 (9th Cir.1975). The record shows that Dr. Fuller did not have the benefit of the medical reports from Hayes' 1983 fall from the store awning. Further, Dr. Fuller relied solely on Hayes' statement that his right knee had been asymptomatic and had not previously been assigned as disabled in reaching his conclusion regarding apportionment and causation. Considering the record as a whole, there is sufficient evidence to sup-

port a finding that Hayes did not establish that his right knee injury was the natural or unavoidable result of the left knee injury that he sustained at NASSCO. Thus, modification is not appropriate on the ground of change in condition.

C. The ALJ determined that any "worsening" of Hayes' right knee was due to the injuries he sustained while employed at Home Depot in 1986, or during a fall through some stairs at his apartment in 1990, and that Hayes had not shown these accidents to be the natural or unavoidable result of his NASSCO injuries. In the Home Depot accident, Hayes fell from a height of about fourteen feet into a display wall and then to the concrete floor below. Although Hayes claims that this fall was related to medication that he was taking, the medical report in the record clearly states that Hayes was not taking any medication at the time of the accident. There is no evidence in the record that indicates that this fall was related to the injuries that Hayes sustained at NASSCO. Similarly, in 1990, Hayes suffered a meniscus tear in his knee when he fell through rotten steps at his apartment. NASSCO was not a party to and does not appear to have been implicated in the resultant lawsuit that Hayes brought against his apartment complex.

The evidence is adequate to support the conclusion that these falls could have been responsible for the worsening of the condition of Hayes' right knee. Further, the record supports the conclusion Hayes did not show either accident to be a natural or unavoidable result of his NASSCO inju-

ries. *See* 33 U.S.C. § 902(2); *Cyr*, 211 F.2d at 456–57.

IV. Weight Attributed to the Psychiatric Evidence

A. Original Finding of No Independent Psychological Impairment

■ The ALJ concluded that Judge Heyer did not make a mistake of fact in Hayes' benefit award by failing to find that Hayes' psychiatric condition amounted to an independent impairment under the LHWCA. The ALJ noted that two board-certified psychiatrists, one retained by Hayes for the purpose of examination and one retained by NASSCO, offered Judge Heyer contradictory diagnoses as to whether Hayes suffered a psychological problem related to his work injuries. Thus, Judge Heyer could have found that the evidence was equally probative and, therefore, could have properly determined that Hayes failed to meet his burden of proving independent psychiatric impairment.[1] *See Director, OWCP v. Greenwich Collieries*, 512 U.S. 267, 280–81, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994).

■ It is clear that the psychiatric evidence in the record could support more than one result and that the ALJ carefully considered all the evidence. In such instances, the Board must defer to the ALJ's findings of fact, unless they are not supported by substantial evidence. *See Director, OWCP v. Campbell Indus., Inc.*, 678 F.2d 836, 839 (9th Cir.1982), *overruled on other grounds by Director, OWCP v.*

---

1. Specifically, the ALJ noted that Judge Heyer could have found that based on the report of Dr. Ryan, Hayes could have established a prima facie case, and therefore invoked a section 20 presumption that his claim properly falls under the LHWCA. *See* 33 U.S.C. § 920. However, Judge Stewart found that NASSCO could have successfully rebutted the presumption with the report of Dr. Bailey.

*See Holmes v. Universal Mar. Serv. Corp.*, 28 BRBS 18, 1995 WL 80265, *1 (DOL Ben. Rev. Bd.1995). Thus, the presumption would no longer control and the issue of causation would be determined by the record as a whole. (*See Director, OWCP v. Greenwich Collieries*, 512 U.S. 267, 280–81, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994)).

*Cargill,* 709 F.2d 616 (9th Cir.1983) (en banc) ("The Board is not at liberty to reweigh the evidence and substitute its own view."). *See also Nardella,* 525 F.2d at 48–49. Further, where the medical testimony offered by the parties is in conflict, the ALJ is not bound to accept the opinion of any one examiner. *See Walker v. Rothschild Int'l Stevedoring Co.,* 526 F.2d 1137, 1140 (9th Cir.1975). The fact that the ALJ accorded the opinions of two consulting psychiatrists equal weight in reaching his conclusion cannot be said to be irrational and the ALJ properly concluded that Hayes did not satisfy his burden of showing independent psychiatric impairment in his original claim for benefits.

**B. Psychiatric Evidence in Hayes' First Modification Proceedings**

ALJ Stewart, who presided over the second modification proceedings, determined that Judge Schneider, who heard Hayes' first petition for modification, made a mistake of fact by attributing greater weight to a report from Dr. Ryan than to those offered by other examining psychiatrists. The evidence consisted of conflicting reports from the two psychiatrists referred to above, Dr. Ryan and Dr. Bailey, and a third report from Dr. Marcus, another board-certified psychiatrist who examined Hayes at NASSCO's request.

ALJ Schneider had credited Dr. Ryan's opinions over those of Dr. Marcus because Hayes had not kept a job after he left NASSCO, which was consistent with Dr. Ryan's diagnosis of impairment and inability to maintain employment due to his mental condition. Judge Stewart, however, found that this earlier credibility determination constituted a mistake in fact because the evidence did not support a finding that Hayes' subsequent jobs were terminated because of his psychiatric condition. Based on our independent review of the record, none of the evidence indicates that Hayes' post-NASSCO jobs ended because of his psychiatric condition and the record clearly supports the interpretation that later employment failures could have been for non-psychological reasons. *See Duhagon,* 169 F.3d at 618.

Additionally, ALJ Stewart discounted Dr. Ryan's report because Dr. Ryan did not have Hayes' full medical and employment histories when he formulated his opinion. Although ALJ Stewart concluded that ALJ Schneider had given too much weight to Dr. Ryan's opinion, this error was harmless because it did not affect Judge Schneider's ultimate conclusion that Hayes' alleged psychological disability did not constitute an independent impairment.

The Board affirmed Judge Stewart's finding that the opinions of all three psychiatrists were equally probable, and, therefore, that Hayes had not shown a mistake of fact or change in conditions regarding independent psychological impairment. *See* 33 U.S.C. § 922. *See also Greenwich Collieries,* 512 U.S. at 280–81, 114 S.Ct. 2251. Based on our review of the record, we conclude that this determination is supported by substantial evidence.

**C. REGAIN Job Market Report**

The ALJ determined that Hayes had not shown a mistake in fact in computing his residual wage-earning capacity because of reliance on allegedly flawed vocational rehabilitation reports prepared by RE-GAIN. Hayes argues that the reports were flawed because their makers did not consider the psychological diagnosis made by Dr. Ryan. The ALJ found that though REGAIN did not have the reports of either Dr. Ryan or Dr. Bailey when formulating its wage-earning capacity reports, no mistake of fact occurred because Hayes' psychiatric pathology was not an independent impairment on his ability to work.

■ Based on the conflicting medical evidence in the record regarding Hayes' psychiatric condition, the Board adhered to the substantial evidence standard when it affirmed the finding that reliance upon REGAIN's reports in computing Hayes' residual wage-earning capacity did not constitute a mistake in fact.

## V. Hayes' Right Shoulder Injury

The ALJ concluded that Hayes failed to show a change in condition related to his right shoulder because there was no causal connection between the injury that Hayes sustained to his right shoulder while working at Home Town Buffet in 1995 and the injuries for which he had previously been awarded disability benefits—those to his left knee and his back.

First, the ALJ doubted that the alleged shoulder injury of October 13, 1995, took place as Hayes reportedly left Home Town Buffet's employ on October 11.[2] Second, the settlement agreement that Hayes entered into with Home Town Buffet makes no mention of the October 13 accident. Third, Judge Stewart found that the medical evidence was questionable because the examining physician, Dr. Brown, did not have the benefit of examining Hayes' full medical history, saw Hayes twenty months after the alleged accident, and apportioned the shoulder injury based on an unsubstantiated, subjective statement that Hayes made to Dr. Brown two and one-half years after the alleged accident. Finally, Judge Stewart found that prior to the alleged injury at Home Town Buffet, Hayes had suffered three injuries to his right shoulder and at least five intervening injuries to his lower back.

■ In light of the limited and subjective information that Hayes supplied to Dr. Brown and the substantial amount of time that elapsed between Hayes' alleged shoulder injury and Dr. Brown's examinations, Judge Stewart's credibility determinations regarding the reports of Dr. Brown are not in conflict with the preponderance of the evidence and are not incredible or unreasonable. *See Cordero,* 580 F.2d at 1335. Further, due to the numerous intervening back, neck, and shoulder injuries in the record, there is substantial evidence to support a finding that Hayes failed to prove that the change in the condition of his right shoulder was the natural or unavoidable result of the injuries that he sustained at NASSCO. *See* 33 U.S.C. § 902(2); *Cyr,* 211 F.2d at 456–57.

## VI. Ability to Find Suitable Alternate Employment

The ALJ concluded that Hayes had not shown a mistake of fact regarding his ability to find suitable alternate employment because: 1) Hayes was capable of performing the occupations listed in the vocational report offered by NASSCO; and 2) by presenting evidence of openings in each of these positions, NASSCO had demonstrated that suitable alternate employment was available. Hayes contends that the vocational report was flawed because he could not perform the alternate employment positions it outlined and the jobs were not available based on his survey of "all" or "a lot" of the employers.

---

**2.** Hayes offered evidence in his petition for reconsideration before Judge Stewart to show that he was employed by Home Town Buffet through October 18, 1995. However, Judge Stewart refused to receive this evidence into the record because to do so would constitute an impermissible reopening of the record to admit additional evidence after a final decision is rendered. *See* 29 C .F.R. §§ 18.54, 18.55.

Even if we assume for the sake of argument that the October 13 injury occurred, as stated above, there is ample evidence in the record to refute causation.

The ALJ found that the reports offered into evidence by NASSCO were credible because they were based on a review of the relevant portions of the record, the assessments were reasoned and thorough, and the occupations identified were consistent with Hayes' documented limitations. The ALJ did not place much weight on Hayes' challenge because Hayes showed only that he contacted a few of the listed sources, it was difficult for the ALJ to determine the time-frame in which Hayes made his calls to the employers, and Hayes did not demonstrate why many of the potential employers were unsuitable. Although the ALJ acknowledged that in light of Hayes' past employment history with one of the security guard companies it would not be an appropriate employer, he found that based on the preponderance of the evidence, Hayes had not established a change in conditions in regard to his wage-earning capacity.

 The record supports the ALJ's determination. The reports are complete and take into account all of Hayes' substantiated physical limitations. They outline their criteria in selecting potential occupations for Hayes and detail multiple contacts with potential employers in areas where Hayes had been living. The ALJ's credibility determination regarding these reports, and his determination against Hayes' testimony, cannot be said to be in conflict with the preponderance of the evidence and are not incredible or unreasonable. *See Cordero*, 580 F.2d at 1335. Thus, our independent review of the evidence supports the ALJ's conclusion that Hayes had not met his burden of establishing a change in condition of wage-earning capacity in order to warrant modification of his original award.

In sum, an independent review of the record supports the ALJ's ultimate conclusion that Hayes failed to establish either a change in circumstance or a mistake of fact as to any of his decisions that were reviewed by the Board. We conclude that the Board properly applied the applicable law and adhered to the substantial evidence standard.

VII. Award of Costs

 NASSCO asserts that it is entitled to an award of costs under section 26 of the LHWCA because Hayes has maintained these proceedings without reasonable ground. *See* 33 U.S.C. § 926 ("If the court having jurisdiction of proceedings in respect of any claim or compensation order determines that the proceedings ... have been instituted or continued without reasonable ground, the costs of such proceedings shall be assessed against the party who has so instituted or continued such proceedings."). We agree. *See Metro. Stevedore Co. v. Brickner*, 11 F.3d 887, 890 (9th Cir.1993) (noting that Congress intended claimants to be subject to costs "if they brought their unreasonable claims into court").

While Hayes attempts to offer examples of errors of law and conclusions that he believes are unsupported by the evidence, his legal arguments are meritless and the ALJ's findings clearly have more than adequate support in the record. Moreover, Hayes brings this petition for review despite five unfavorable decisions on the merits. The ALJs who have considered his claims went to great lengths to clarify the law and explain their extensive reviews and treatments of the evidence. It is troubling that Hayes repetitioned for modification on nearly identical evidence only eight months after this court dismissed this first petition for modification. Only his contentions regarding his shoulder appear to be new, and the ALJ found them to be without merit. Certainly by the time he requested review, Hayes had sufficient experience with the LHWCA to reasonably

know that maintenance of this proceeding was fruitless. Accordingly, we grant NASSCO's request for an award of costs pursuant to section 26 of the LHWCA.

PETITION FOR REVIEW DENIED. Costs awarded to respondent NASSCO.

---

* Spelling is correct as noted. The district court docket sheet should be corrected to reflect this change as various court documents reflect the correct spelling of the name.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.