**METROPOLITAN STEVEDORE COMPANY, Petitioner,**

v.

**CRESCENT WHARF AND WAREHOUSE CO.; Crescent City Marine Ways and Dry Dock Company; Pasha Maritime Services; Homeport Insurance Co.; SAIF Corporation; State Compensation Insurance Fund; Wil-**

liam G. Price; Director, Office of Workers Compensation Programs; U.S. Department of Labor, Respondents.

**No. 01–71505.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 3, 2003.

Filed Aug. 13, 2003.

---

Robert E. Babcock, Sherwood, OR, for the petitioner.

Gary M. Spero (briefed), State Compensation Insurance Fund, Santa Ana, CA, for respondents Pasha Maritime Services, Marine Terminals Corporation and State Compensation Insurance Fund.

Christopher M. Galichon, Dupree Galichon, plc, San Diego, CA, for respondent Crescent Wharf & Warehouse.

Norman Cole, SAIF Corporation, Salem, OR, for respondents Crescent City Marine Ways & SAIF Corporation.

Whitney R. Given, U.S. Department of Labor, Washington, DC, for respondent Director, Office of Workers' Compensation Programs.

Before KLEINFELD and McKEOWN, Circuit Judges, and SHAPIRO,* District Judge.

SHAPIRO, District Judge.

Metropolitan Stevedore Company ("Metropolitan") petitions for review of a Benefits Review Board ("BRB") ruling affirming the decision of the Administrative Law Judge ("ALJ") on a claim filed under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 et seq. The ALJ found that Metropolitan was the employer liable for compensation benefits to claimant William Price ("Price") for his disability resulting from cumulative bilateral knee trauma sustained in the course of his longshore employment. The issue on appeal is whether the BRB and ALJ misapplied the Ninth Circuit's "two-injury variant" of the LHWCA's "last responsible employer" rule by imposing responsibility on Metropolitan for the benefits awarded Price.

## Facts

Price worked as an industrial mechanic and later as a forklift driver from the mid–1960's until 1996. During that time he worked for several companies for varying periods. Early in his employment he began to experience pain in his knees that increased significantly over time. By 1990, he tried to obtain work only as a forklift driver and occasionally refused work he believed would aggravate his knee condition. In 1992, he sought medical care for his knee condition; on September 23, 1993, his doctor told him that x-rays revealed medial joint line "collapse" requiring total bilateral knee replacement surgery. Price's last employer before this visit to his doctor was Crescent City Marine Ways ("Crescent City").

In the months following, Price received injections and other prescribed pain medications to avoid or delay the need for surgery. X-rays showed degeneration of the knee condition with no cartilage remaining; Price's knees were described as "bone on bone."

On December 16, 1994, Price asked his doctor to schedule knee replacement surgery. Price's last employer before this visit to his doctor was Crescent Wharf & Warehouse ("Crescent Wharf").

Knee replacement surgery was performed on April 24, 1995. His last day of employment before the surgery was April 22, 1995, when he worked as a forklift operator for appellant, Metropolitan. According to Price, while operating the forklift he had to use the gas and brake pedals and mount and dismount the vehicle many times. He testified that his condition "got progressively worse" over the course of the day. After the surgery, Price filed a LHWCA compensation claim with Metropolitan, his last employer.

## Discussion

 Under the "last responsible employer rule," a single employer may be held liable for the totality of an injured worker's disability, even though the disability may be attributable to a series of injuries that the worker suffered while working for more than one employer. *Cordero v. Triple A Machine Shop,* 580 F.2d 1331 (9th Cir.1978), *cert. denied,* 440 U.S. 911, 99 S.Ct. 1223, 59 L.Ed.2d 459 (1979). The claimant's last employer is liable for all compensation due, even though prior employment may have contributed to the disability. *Foundation Constructors v. Director,* 950 F.2d 621, 623 (9th Cir.1991). When determining the em-

---

* The Honorable Norma L. Shapiro, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

ployer to be held liable, we apply this rule distinctly depending on whether the disability is an occupational disease, such as asbestosis, or the result of cumulative traumas. *Id.* at 624.

If the disability is an occupational disease, we have held that the responsible employer is the one last exposing the worker to injurious stimuli prior to the date the worker became aware of suffering from the occupational disease. *Stevedoring Services of America v. Director,* 297 F.3d 797, 802 (9th Cir.2002). However, in cases where the disability is a result of cumulative traumas, so-called "two-injury" cases, the responsible employer depends upon the cause of the worker's ultimate disability. If the worker's ultimate disability is the result of the natural progression of the initial injury and would have occurred notwithstanding a subsequent injury, the employer of the worker on the date of the initial injury is the responsible employer. However, if the disability is at least partially the result of a subsequent injury *aggravating, accelerating or combining with a prior injury* to create the ultimate disability, we have held that the employer of the worker at the time of the most recent injury is the responsible, and therefore liable, employer. *Foundation Constructors,* 950 F.2d at 624; *Kelaita v. Director,* 799 F.2d 1308 (9th Cir.1986). While it has been suggested that the "last responsible employer" rule is applied differently depending on whether a disability is categorized as an occupational disease or a two-injury case, we have held that cumulative trauma cases are reasonably analyzed as two-injury cases. *See Kelaita,* 799 F.2d at 1311–12. Here, the parties agree that Price's injury was caused by cumulative trauma. The parties disagree on how the applicable standard should have been applied.

The ALJ weighed all the evidence and determined that injuries suffered during Price's April 22, 1995, employment with Metropolitan caused some minor but permanent increase in the extent of his disability and increased his need for knee surgery, even though the surgery had already been scheduled. The ALJ relied on doctors' testimony that there was a gradual loss of knee bone and cartilage each additional day Price worked. Since Price was still able to do his job to some extent the day before the surgery, he had not progressed to the point of maximum disability, i.e., total inability to use his legs. There was gradual wearing away of the bone even on the last day before surgery, so his employment with Metropolitan caused a marginal increase in the need for surgery. The ALJ concluded that Metropolitan was the "last responsible employer" and was liable to Price under the LHWCA even though Price had worked for Metropolitan only one day.

The BRB, affirming the ALJ's decision, found that the ALJ provided a rational basis for crediting the opinions of Price's doctors that his condition was aggravated by work for Metropolitan on April 22, his last day of work before surgery. The BRB rejected Metropolitan's contention that the ALJ's findings were not supported by substantial evidence.

The BRB is required to accept the ALJ's findings unless they are contrary to law, irrational, or unsupported by substantial evidence. *Stevedoring,* 297 F.3d at 801. We review the Board's decisions for errors of law and adherence to the substantial evidence standard. *Id.* The BRB's interpretation of the LHWCA is a question of law that we review *de novo. Id.* We will respect the Board's interpretation of the statute where such interpretation is reasonable and reflects the policy underlying the statute. *Id.*

There was substantial evidence allowing the ALJ reasonably to conclude that

Price's work for Metropolitan, even on that single day, aggravated his underlying knee condition. Several doctors testified that just because all of the cartilage had already been worn away did not mean there could be no further damage to the knees. The question was whether that aggravation was of the "disability," as defined by the Act and interpreted by case law.

On appeal, Metropolitan argues that the ALJ misapplied the "last responsible employer" rule. Metropolitan advocates a definition of "disability" under the LHWCA relating to diminished earning capacity, rather than physical harm. Metropolitan urges that because Price was already scheduled for surgery and his employment with Metropolitan did not affect the nature of or need for the surgery, Price's diminished earning capacity was fixed before the date of employment with Metropolitan. Metropolitan therefore argues it was inappropriate for the ALJ to assign liability to Metropolitan as the "last responsible employer."

Metropolitan's interpretation of the LHWCA and argument regarding diminished earning capacity are not supported by the case law. Our two leading cases, *Foundation Constructors v. Director*, 950 F.2d 621 (9th Cir.1991), and *Kelaita v. Director*, 799 F.2d 1308 (9th Cir.1986), do not discuss a claimant's earning capacity. In both cases, claimants suffered traumatic injuries that were aggravated while working for other employers to whom liability was assigned. In *Foundation Constructors*, we did not address when the claimant's earning capacity was diminished, but affirmed the ALJ's finding because the work performed for the employer was "harmful" to claimant's condition. *Foundation*, 950 F.2d at 624. Likewise, in *Kelaita*, we based our decision on the finding that "each flare-up of pain represented cumulative trauma and aggravated the un-

derlying injury." *Kelaita*, 799 F.2d at 1311–12.

Metropolitan cites cases from other circuits to support its contention that disability should be defined by diminished earning capacity, but they are inapposite because they are "occupational disease" cases rather than "two-injury" cases. *See Liberty Mutual Insurance Co. v. Commercial Union Insurance Co.*, 978 F.2d 750 (1st Cir. 1992); *Argonaut Insurance Co. v. Patterson*, 846 F.2d 715 (11th Cir.1988). The *Liberty Mutual* court specifically stated that its reasoning was limited to occupational disease claims, because occupational diseases, involving continued exposure to injurious stimuli, give rise to "special problems in assigning liability." *Liberty Mutual*, 978 F.2d at 753. The *Argonaut* court also addressed only the occupational disease aspect of the last responsible employer rule. *See* 846 F.2d at 721.

In occupational disease claims, it is necessary to define disability in terms of loss of earning capacity, because the lack of medical certainty with respect to these diseases makes it difficult to connect the progression of the disease with particular points in time or specific work experiences. However, cumulative traumatic injuries are not necessarily fraught with the same inherent ambiguity and can be correlated more directly with identifiable work activities at particular times. It is unnecessary and undesirable to use diminished earning capacity as the identifying feature of the disability in two-injury cases. This is plainly a two-injury case and substantial evidence in the record supports the ALJ's findings that Metropolitan was Price's last employer and Price's employment with Metropolitan contributed to his injury; the ALJ correctly assigned liability to Metropolitan.

The Director of the OWCP also urges us to use diminished earning capacity as a

benchmark, and argues for a rule that assigns liability to the claimant's last employer before the need for surgery arose. We decline to make this departure from our prior approach; it would introduce new uncertainty into the process of determining liability under the last employer rule. The inquiry would not be a straightforward one: in this case, it might be the date surgery was first recommended, the date that Price finally agreed to surgery, the date the papers were filed, the date the surgery was finally scheduled, or the date Price signed the consent form. In contrast, the approach taken by the ALJ and the Board is easy to apply and reduces uncertainty.

The assignment of liability to Metropolitan by the "last responsible employer" rule might seem harsh, because Price had been suffering from a knee condition for years and worked for Metropolitan only one day. However, there is inherent virtue in the "last responsible employer" rule. Each employer subject to the LHWCA shares the risk that it will bear the burden of compensation at one point or another, even if it was not predominantly responsible for the compensable injury. The unfairness to the last employer is mitigated by two factors: the spreading of the risk through mandatory insurance, and the availability of the second injury fund to the last employer in some cases. As this court stated in *Foundation Constructors*, "this rule serves to avoid the difficulties and delays connected with trying to apportion liability among several employers, and works to apportion liability in a roughly equitable manner, since all employers will be the last employer a proportionate share of the time." *Foundation*, 950 F.2d at 623. Having a bright line rule eliminates the need for costly litigation and helps ensure that workers receive timely and adequate compensation for their injuries under the LHWCA.

**Conclusion:**

The BRB was correct in finding substantial evidence in the record for the ALJ's decision. The BRB was also correct in interpreting the "last employer rule" to impose liability on Metropolitan.

The Decision and Order of the Benefits Review Board is

AFFIRMED.