**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| AEGIS DEFENSE SERVICES, LLC/ALLIED WORLD ASSURANCE COMPANY,<br><br>Petitioner,<br><br>v.<br><br>MATHEW MARTIN; et al.,<br><br>Respondents. | No. 19-70566<br><br>BRB Nos. 18-0122<br>18-0122A<br><br>MEMORANDUM[*] |
| MATHEW MARTIN,<br><br>Petitioner,<br><br>v.<br><br>AEGIS DEFENSE SERVICES, LLC/ALLIED WORLD ASSURANCE COMPANY, Broadspire; et al.,<br><br>Respondents. | Nos. 19-70588<br><br>BRB Nos. 18-0122<br>18-0122A |

On Petition for Review of an Order of the
Benefits Review Board

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Submitted October 5, 2020
Seattle, Washington

Before:  CALLAHAN and CHRISTEN, Circuit Judges, and RAKOFF,*** District Judge.

These companion cases arise from an order issued by the Benefits Review Board (BRB) pursuant to the Longshore and Harbor Workers' Compensation Act (Longshore Act), 33 U.S.C. §§ 901-950, as extended by the Defense Base Act, 42 U.S.C. §§ 1651-55.  In their respective petitions, Aegis Defense Services LLC/Allied World Assurance Company (Aegis/Allied) and Mathew Martin contend that the BRB committed certain errors when it denied the subject appeals.

The BRB must accept the ALJ's findings unless they are "contrary to the law, irrational, or unsupported by substantial evidence." *Chugach Mgmt. Servs. v. Jetnil*, 863 F.3d 1168, 1173 (9th Cir. 2017); *see also* 33 U.S.C. § 921(b)(3).  We, in turn, review the BRB's decision for "errors of law and for adherence to the substantial evidence standard." *Chugach Mgmt. Servs.*, 863 F.3d at 1173 (internal quotation marks omitted). We conclude that the BRB did not err and deny both petitions.

---

**        The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

***        The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

1. The BRB did not err by concluding that the ALJ's failure to address concurrent permanent partial disability awards was rational and supported by substantial evidence. Our circuit applies the "last responsible employer/carrier rule," which provides that "a single employer may be held liable for the totality of an injured worker's disability, even though the disability may be attributable to a series of injuries that the worker suffered while working for more than one employer." *Metro. Stevedore Co. v. Crescent Wharf & Warehouse Co.*, 339 F.3d 1102, 1104 (9th Cir. 2003) (citing *Cordero v. Triple A Machine Shop*, 580 F.2d 1331 (9th Cir. 1978)); *Stevedoring Servs. of Am. v. Dir., Office of Workers' Comp. Programs*, 297 F.3d 797, 802 (9th Cir. 2002) (explaining that the rule assigns full liability for occupational injuries to the last responsible insurance carrier as well as the last responsible employer).

Here, the ALJ's finding that Martin suffered a permanent disability only after he began working in Afghanistan under Aegis/Allied's coverage is supported by substantial evidence. First, Martin was cleared for duty by his treating physician prior to leaving for Afghanistan. Record evidence supports the ALJ's finding that Martin was able to perform his assigned duties and never missed a day of work due to neck pain during his deployment. Moreover, Martin extended his deployment on two occasions. From this evidence, the ALJ reasonably concluded

3

that Martin's condition when he was first deployed was manageable and did not amount to a disability. Aegis/Allied's suggestion that some record evidence tends to show Martin had not fully recovered before arriving in Afghanistan does not compel a different conclusion. *See Glob. Linguist Sols., LLC v. Abdelmeged*, 913 F.3d 921, 923 (9th Cir. 2019) ("Although other evidence in the record might adequately support a different conclusion, that evidence does not negate or nullify the substantial evidence supporting the ALJ's conclusion."). Accordingly, we affirm the BRB ruling that Aegis/Allied was the last responsible carrier in this case; the BRB did not err by rejecting Aegis/Allied's argument for a concurrent award.

2. The BRB implicitly considered and rejected Aegis/Allied's argument that Martin's wages in Afghanistan were not representative of his wage-earning capacity because he earned them by "extraordinary effort." The premise of Aegis/Allied's argument is that Martin had suffered a permanent disability—i.e. excruciating neck pain—prior to arriving in Afghanistan. The BRB rejected this premise when it affirmed the ALJ's finding that Martin did not arrive in Afghanistan with a disability. As we explained, this conclusion was supported by substantial evidence.

3. The BRB did not err by denying Martin's request to be reimbursed for the costs of refinancing his home. Martin concedes that neither the Longshore Act nor its implementing regulations expressly authorize reimbursement of this type of expense for a carrier's wrongful termination of benefits. Martin also concedes that the money he borrowed on his home was not used to cover medical costs. Nevertheless, Martin argues that he is entitled to reimbursement because such recovery is consistent with the underlying policies of the Longshore Act.

In *Foundation Constructors*, we held that where the Director of Workers' Compensation Programs construed the Longshore Act to permit ALJs to award interest payments for unpaid disability benefits, such an interpretation was reasonable and consistent with the Longshore Act's goal of "fully compensating workers for their valid claims." *Found. Constrs, Inc. v. Dir., Office of Workers Comp. Programs*, 950 F.2d 621, 625 (9th Cir. 1991) (citing *Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 843 (1984)). Martin analogizes his request for reimbursement to the award of post-judgment interest in *Foundation Constructors*; he contends that reimbursement is necessary to dissuade employers from wrongfully terminating or delaying benefits. We disagree.

The interest in *Foundation Constructors* was necessary to preserve the value of unpaid awards over time, which directly serves the remedial purpose of the

Longshore Act. *Id.* Here, Martin requests something beyond preserving the value of benefits provided for by the statute. He asks that we hold employers responsible for incidental financial consequences caused by delayed compensation. We do not find evidence in the Longshore Act that Congress intended to provide such a remedy and decline to read one into the text.

**PETITIONS DENIED.**